### Bronaugh, et al. v. Burley Tobacco Company.

(Decided February 2, 1926.)

## Appeal from Jessamine Circuit Court.

1. Mortgages—Rule that Land Successively Conveyed or Mortgaged Will be Subjected in Inverse Order Does Not Apply in Kentucky. —Rule that, where parts of tract have been successively conveyed or mortgaged to different persons, land will be subjected in inverse order of its alienation, does not apply in Kentucky.

2. Mortgages—Proceeds of Separate Tracts Applied on First Mortgage Pro Rata, though One Covered by Second Mortgage when Execution Levied.—Where judgment creditor levied on tracts of land, all of which were mortgaged, and one subject to second mortgage, proceeds of different tracts were properly applied pro rata on first mortgage, in view of Ky. Stats., section 2358a-2, instead of marshaling assets as between the two mortgages.

3. Marshaling Assets and Securities—Execution Creditor has Same Right to Object to Marshaling of Assets to His Prejudice as Mortgagee would have.—Execution creditor has same right to object to marshaling of assets to his prejudice as mortgagee would have.

4. Marshaling Assets and Securities—Right to Marshal Assets Not a Lien, but a Right, to be Determined at Time Marshaling is Invoked.—Right to marshal assets is not a lien nor an interest in property, and does not fasten itself upon situation at time successive securities are taken, but is a right, to be determined at time mashaling is invoked.

N. L. BRONAUGH for appellant.

A. S. MOORE for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

On July 6, 1920, Levi C. Winkle was the owner of three tracts of land worth respectively, $1,225.00, $1,000.00 and $275.00. On that day he and his wife executed a mortgage on all three tracts to the Wilmore Building and Loan Association to secure the payment of a note for $2,000.00. On May 25, 1921, he and his wife executed a mortgage to Bronaugh on the second tract to secure a debt of $1,000.00. In May, 1922, the Burley Tobacco Company secured a judgment against Winkle for $1,261.00; execution was issued on the judgment and duly levied on all three tracts of land. This suit was then brought to foreclose the liens. The land sold for the prices above indicated, amounting in all to $2,500.00, and not enough to pay all the debts. The Burley Tobacco Company insists that the building and loan association should be required to make its debt *pro rata* out of all three tracts, that what is left of the second tract should be adjudged to the Bronaughs, and what is left of the first and third tracts should be paid to it. On the other hand, the Bronaughs insist that the proceeds of the first and third tracts should be applied to the payment of the debt of the building and loan association and that only what is left of that debt should be paid out of the proceeds of the second tract and the remainder of the proceeds of the second tract should be paid to them. The amount due the building and loan association is $1,628.00. So if the position of the Bronaughs is sustained the Burley Tobacco Company will get nothing. The circuit court

adopted the view of the tobacco company. The Bronaughs appeal.

In 5 Pomeroy's Equity, section 2290, the rule as to marshaling of securities is thus stated:

> "Relief will not be given if it will prejudice the rights of third persons. The question frequently arises when there are more than two liens to be adjusted. For instance, a third mortgage may be given, covering property included in the first but not in the second. To compel a marshaling of securities would prejudice the rights of this third party. The right to marshaling being a mere equity and not a lien, it is generally held that it is subject to displacement and defeat by subsequently acquired liens upon the funds."

In 38 C. J. pp. 1367, 1370, the rule usually followed is thus stated:

> "The right to marshal assets is governed by equitable principles, the doctrine applying only when it can be done with justice to the creditors, and without prejudice to third persons.
>
> "The equity of marshaling assets is not one which fastens itself upon the situation at the time the successive securities are taken, but, on the contrary, is one to be determined at the time the marshaling is invoked. It can only become a fixed right by taking proper steps to have it enforced, and is therefore subject to defeat at any time before it is attempted to be enforced."

To same effect 18 R. C. L., p. 456.

In Logan v. Anderson, 18 B. Mon. 119, this court thus stated the rule:

> "It is a general rule of equity that a person who has the means of satisfying his own debt out of several funds, shall so exercise his right as not to take away the security of another creditor, to whose debt one only, or less than all of those funds are liable. (1 Story's Eq. Jur., sec. 633.) But equity refuses to marshal securities where, in aiding one incumbrancer, it would injure another, or trench upon the rights, or operate to the prejudice of the party entitled to the double fund."

In Shewmaker v. Yanker, 66 S. W. 1, Shewmaker had made a deed of assignment for the benefit of his creditors.  The facts are thus stated by the court:

"The assigned estate consisted of three tracts of land, one containing 200 acres, another 25 acres, and the third 6 acres  On the first tract, from which was realized $1,704.38, there was a mortgage lien to Arena Peter for $657.54; also a second mortgage to James W. Shewmaker for $317.87, and, subject to these, a third mortgage to James W. Shewmaker, Cal Shewmaker and Frank Shewmaker for $735.00. The third morgage also included the second tract of 25 acres, from which was realized $558.66.  There was also a fourth mortgage to appellant, Uriah Shewmaker, for $679.28, on the first tract, which was subordinate to the other three mortgages.  The third tract, which sold for $288.12, was unincumbered."

On these facts the court, following Logan v. Anderson, refused to marshal the assets against the assignee or the fourth mortgagee and thus stated the reasons for its conclusions:

"The assignee, under his deed of assignment, took all the title to the land then in his assignor in trust for the general creditors.  They thereby acquired a lien on this estate for the payment of their debts, and the assignee had a lien on it for his necessary costs of administration.  After this deed was made, the general creditors could not protect themselves by taking out an execution or attachment and levying it on the second tract, subject to the mortgage then on it.  It is very clear that, if they had made such a levy before the deed of assignment was executed, the securities could not be marshaled so as to defeat their lien by throwing the entire burden of the mortgage held by James W., Cal and Frank Shewmaker on that tract.  The same effect must be given to the deed of assignment that would be given to an execution levied by a creditor or to a mortgage made to him by the debtor at the time the assignment was executed; otherwise the assignment would only tie his hands, preventing him from protecting himself without securing his interest in any way."

To the same effect is Griffin v. Gingel, 79 S. W. 285, and while there is conflict of authority in other states the

following well considered cases sustain the rule: Green
v. Ramage, 51 Am. Dec. 458; Harrington v. Taylor, 176
Cal. 802; Gilliam v. McCormick, 85 Tenn. 597; Richards
v. Cowles, 105 Iowa 734.

Some of the conflict in the cases is due to the fact
that in many states the rule prevails that where parts of
a tract of land have been successively conveyed or mort-
gaged to different persons, the land will be subjected in
the inverse order of its alienation; but this rule does not
apply in Kentucky. Morrison v. Beckwith, 4 T. B. Mon.
73; Blight v. Banks, 6 T. B. Mon. 192; Dickey v. Thomp-
son, 8 B. Mon. 614; Gridley v. Brooks Waterfield Co., 9
L. R. A. 555, 14 S. W. 407.

In a number of states an execution or attachment
creditor who has by levy obtained a lien on the property
is not put upon the same footing as a subsequent mort-
gagee; but it is hard to see how such a distinction can be
maintained under statutes such as ours. By our stat-
ute land may be levied on under execution or attachment.
The creditor acquires a lien from the time that the process
is placed in the hands of the officer. The property may
be sold under the execution lien; the purchaser acquires
a lien on the property for the amount of his bid with in-
terest at 10%. By section 2358a-2, Kentucky Statutes,
no attachment nor execution, nor any levy or sale under
either, shall in any manner affect the right, title to, or in-
terest of a subsequent purchaser or incumbrancer of the
land without notice, unless there shall be filed in the
county clerk's office a memorandum showing the facts
required by the statute. Plainly it is the meaning of the
statute that, when it is complied with, such a levy shall
take precedence over a subsequent purchaser or incum-
brancer of the land. The Burley Tobacco Company com-
plied with the statute, and it is plain that the purpose of
the statute was to give such a creditor a lien on the prop-
erty superior to a subsequent mortgage. If such a subse-
quent mortgage had been executed in this case the assets
could not be marshaled to his prejudice, and if his rights
are subordinate to the rights of the execution creditor it
is hard to see how the assets may be marshaled against
him. The fact is the marshaling of assets is a mere
equity. The right does not exist until it is enforced.
Whether or not it should be enforced depends upon the
equity of the parties at the time the order is made.
Clearly the execution creditor has the same right to
object to the marshaling of assets to his prejudice as a

mortgagee would have, had he taken his mortgage after the creditor had acquired his lien, for equity in all cases rewards the vigilant. In Jones v. Dulaney, etc., 86 S. W. 547, it was held that an attaching creditor may require the attaching lienholder having a lien on both funds to exhaust first the fund not covered by the attachment. If the attaching creditor, when he holds a second lien, is as between him and the holder of the prior mortgage, a lienholder with the same rights as the holder of a second mortgage, it is hard to see why he has not the same rights as between him and the holder of the second mortgage, when he holds the third lien.

It is earnestly insisted that the execution creditor simply stands in the shoes of his debtor and acquired nothing more by his levy than the debtor had. But this is equally true of a third mortgage, and the assets may not be marshaled against a third mortgage (though taken to secure an antecedent debt) or against an assignee for the benefit of creditors. The rights of the execution creditor are certainly as good as either of these.

It is also earnestly insisted that it is simply a contest between equities and that the second mortgage being older than the execution lien the older equity should prevail; but the right to marshal assets is not a lien; it is not an interest in the property; it does not fasten itself upon the situation at the time the successive securities are taken, but, on the contrary, is a right to be determined at the time the marshaling is invoked. (105 Iowa 741, 85 Tenn. 597.

Judgment affirmed. Whole court sitting.

Chief Justice Clarke dissents.