## Humphries v. Fitzpatrick et al.

(Decided March 23, 1934.)

518

HENRY WATSON for appellant.

W. B. WHITE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The doctrine of marshaling assets, as it concerns the owner of a second mortgage and an attaching creditor, is the paramount question presented for consideration.

The Kentucky Joint Stock Land Bank of Lexington, Ky., on August 15, 1923, loaned Thomas W. Fitzpatrick and Susie M. Fitzpatrick $30,000, evidencing which they executed and delivered certain notes. To

secure their payment they executed and delivered to it a mortgage on the land described therein and also on the "rents, issues and profits" arising from the land during the life of the mortgage. The Fitzpatricks were indebted to the Traders' National Bank of Mt. Sterling, Ky., evidenced by notes, and to secure their payment, on December 11, 1924, they executed and delivered to it a mortgage on the same land. This mortgage contained no provision concerning a lien on the "rents, issues and profits."

In August, 1929, the Kentucky Joint Stock Land Bank brought this suit against the Fitzpatricks to collect its debt and enforce its mortgage on the land and the "rents, issues and profits" therefrom. A judgment was entered in 1930 decreeing the Kentucky Joint Stock Land Bank a "lien prior and superior to all others," and to the Traders' National Bank of Mt. Sterling a second lien, on the land, and directed its sale to satisfy their respective debts.

In accordance with this judgment, the land was sold by the master commissioner. To his report of sale, exceptions were filed, sustained, and the sale set aside. In the order setting it aside, the court directed, unless the Fitzpatricks executed a bond, guaranteeing the land to bring $5,000 in excess of the price for which it had been sold by the commissioner, the land be placed in the hands of the court's receiver, and directed him to rent it for the year 1931, the proceeds of the rent, when collected, after the payment of the costs, taxes, insurance premiums, and interest accruing on the debt of the Kentucky Joint Stock Land Bank to be credited on its debt.

The Fitzpatricks, in open court, declined to comply with the order in relation to the execution of the $5,000 bond, and consented to the appointment of a receiver to take charge of, and rent, the land for the year 1931. W. K. Prewitt was appointed and qualified as receiver, and took charge of the land under the order of the court, rented and collected the rent, and reported the same to the court. He rented a separate portion of it to Calk, McCormick, Perry, and Duff, taking their respective notes with surety for the agreed rent payable January 1, 1932. The rent was $2,425.

So much of the order as set aside the sale was appealed to this court and reversed, with directions to con-

firm the sale. See Kentucky Joint Stock Land Bank of Lexington v. Thomas W. Fitzpatrick et al., 237 Ky. 624, 36 S. W. (2d) 25.

The price realized at the master commissioner's sale exceeded the amount of the debt, interest, and costs of the Kentucky Joint Stock Land Bank.

In the distribution of the proceeds of the sale of the land and the rent for the year 1931 to the amount of $1,339.32, the court directed that the Kentucky Joint Stock Land Bank had a lien thereon to secure its debt, interest, and costs, and the Traders' National Bank's mortgage being a second lien on the proceeds of the land, which were not sufficient to satisfy the debt, interest, and costs of the Kentucky Joint Stock Land Bank and the debt, interest, and costs of the Traders' National Bank, therefore, in equity, the Traders' National Bank was entitled to compel the Kentucky Joint Stock Land Bank to look to and exhaust the $1,339.32, the balance of the rent for the year 1931 in the payment of its debt, interest, and costs before receiving thereon that amount of the proceeds of the land, thus leaving the $1,339.32 of the proceeds of the sale to be applied to the payment of the debt, interest, and costs of the Traders' National Bank.

On the 26th day of February 1931, Charles Humphries, who, on the 3d day of June, 1925, in the Montgomery circuit court, had recovered a judgment against Thomas W. Fitzpatrick and S. P. Greenwade for $1,000, with interest and costs, filed an action in equity, on a return of nulla bona, in which an attachment was issued addressed to Sid Calk, W. S. McCormick, C. E. Duff, and Tom Perry and the receiver with a notice of the object of attachment, as authorized by subsection 3 of section 203, Civil Code of Practice, which was directed to the sheriff for execution. It was returned March 11, 1931, executed on Duff, McCormick, Calk, and Perry and the receiver. At the May term, 1931, the action of Humphries against Fitzpatrick and Greenwade was consolidated with that of the Kentucky Joint Stock Land Bank against Fitzpatrick et al. Later Humphries entered a motion, requesting the court to sustain his attachment, which was accordingly done by an appropriate order. At the same term of court, the mandate of this court was entered of record with an order complying therewith; also driecting the receiver to pay the

Kentucky Joint Stock Land Bank "the remainder of the fund in his hands arising from the proceeds of the rent for the year 1931 as a credit upon its judgment herein."

Humphries, by motion, sought to require the receiver to satisfy his judgment of $1,000, interest, and costs, out of the funds, $1,339.32, then in the hands of the receiver arising from the rent of the land. The court overruled his motion. He excepted, and is here insisting that, having caused the receiver and the individuals who rented from the receiver the land of the Fitzpatricks for the year 1931 to be served with garnishment, he has a superior lien on the proceeds of the rent collected and reported by the receiver.

Humphries contends that the reversal by this court of the order setting aside the sale operated to reverse the judgment concerning the payment of rent to the Kentucky Joint Stock Land Bank, and that the attachment issued in his action with notice indorsed on it, stating the object of the attachment, and addressed to the named garnishees, was properly served on the receiver and the persons to whom the land was rented by the receiver before the entry of the second order directing the payment of the $1,339.32 to the Kentucky Joint Stock Land Bank, and therefore his attachment lien on the rent is superior in equity to the right of the Traders' National Bank to invoke the doctrine of marshaling assets. Also, he contends the court on its own motion entered an order appointing a receiver and directed him to take charge of, and rent, the land, and this fact deprives the Kentucky Joint Stock Land Bank of the right to subject the rent collected by the receiver to the payment of its debt, interest, and costs, and also deprives the Traders' National Bank of its right to invoke the doctrine of marshaling assets, as against his attachment lien.

The mortgage of the Kentucky Joint Stock Land Bank pledged the "rents, issues and profits" to secure the payment of its debt. This provision of the mortgage entitled it to subject all rent accruing after the institution of its action, and after the appointment of the receiver, to the satisfaction of its debt, before Humphries acquired any right by his garnishment. In Watts' Adm'r v. Smith, 250 Ky. 617, 63 S. W. (2d) 796, we stated, and in Louisville Joint Stock Land Bank v. Watts, 251 Ky. 832, 66 S. W. (2d) 39, we approved the rule that, where the mortgage pledges rents, issues, and

profits without provision for receiver on mortgagor's default, the mortgagee in an action to enforce the mortgage is entitled to subject all such rents, etc., accruing thereafter, to the satisfaction of his claim before others acquire rights without actual or constructive notice of the mortgagee's rights, at least if the lien thereon in favor of third parties has not already come into existence. It is not necessary for a disposition of the present case to review or elaborate this principle.

It is not doubtful that the Kentucky Joint Stock Land Bank, if necessary to pay its debt, interest, or costs, was entitled, under its mortgage and the allegations of its pleadings, to subject the $1,339.32 of the rent collected and reported by the receiver. The Traders' National Bank was not entitled under its mortgage to a lien on the rent. It was, however, if necessary to pay its debts, interest, or costs, entitled to invoke the doctrine of marshaling assets to compel the Kentucky Joint Stock Land Bank to apply that amount of the rent collected and reported by the receiver, to which it was entitled under its mortgage and pleading, to the payment of its debt, interest, or costs, before it received in satisfaction of its debt, interest, or costs, that amount out of the proceeds of the sale of the land.

In Eastern Construction Co. v. Carson Construction Co.'s Trustee, 242 Ky. 648, 47 S. W. (2d) 67, 69, it is written:

> "It is an ancient rule of equity that, where a creditor has a lien on, or a right to, two funds in the hands of the same debtor, and another creditor at the same time has a lien on one of them, the latter is entitled to have the application of the fund, or property, on which he has no lien subjected first to the debt of the former, and equity will compel the former to make his debt out of that fund to which the latter cannot resort. Swigert v. Bank of Ky., 17 B. Mon. 268; First National Bank v. Schussler, 2 S. W. 145, 8 Ky. Law Rep. 516; Schupp & Schmitt & Bensinger v. Thomasson's Ex'r, 9 Ky. Law Rep. 360; Bank of Ky. v. Vance's Adm'rs, 4 Litt. 168; Hughes v. Shannon & Low, 13 Ky. Law Rep. 782; Miles v. National Bank, 140 Ky. 376, 131 S. W. 26; Hite v. Reynolds, 163 Ky. 502, 173 S. W. 1108, Ann. Cas. 1917B, 619; Bronaugh v. Burley Tob. Co., 212 Ky. 680, 280 S. W. 97; Wender Blue Gem Coal Co.

v. Louisville Property Co., 137 Ky. 339, 125 S. W. 732.''

Determining its rights by this principle, the Traders' National Bank plainly was entitled to the application of the doctrine of marshaling assets, thereby compelling the Kentucky Joint Stock Land Bank to look to and exhaust the $1,339.32 of the rent before applying the proceeds of the land to this amount to the payment of its debt, interest, and costs, unless the attachment lien thereon in favor of Humphries had already come into existence.

Equity will not marshal securities where it works an injustice to an innocent third party (Hite v. Reynolds, 163 Ky. 502, 173 S. W. 1108, Ann. Cas. 1917B, 619; Hughes v. Shannon & Low, 13 Ky. Law Rep. 782), or to displace or impair a prior attachment or execution or other lien or a contract right of another (Calhoun v. Federal Land Bank of Louisville, 230 Ky. 460, 20 S. W. [2d] 72). The right to marshal assets is not a lien, but a right determined by the principles of intrinsic equity between existing liens on the property of a common debtor, at the time the marshaling is invoked. Bronaugh v. Burley Tob. Co., 212 Ky. 680, 280 S. W. 97.

Humphries had the right to object to the marshaling of the assets of the common debtor to his prejudice. Bronaugh v. Burley Tob. Co., supra. His right thereto, however, is to be measured and determined by that of the Fitzpatricks to object and prevent the application of the doctrine to the particular fund. The Fitzpatricks were in equity, without right to question or dispute the mortgage of the Kentucky Joint Stock Land Bank as to the rent under the control of the court. The fact that the mortgage of the Traders' National Bank does not carry a provision creating a lien on the rent does not deprive it of the right to invoke the doctrine of marshaling assets. Kauffman & Co. v. Loventhal, etc., 8 Ky. Law Rep. 62.

It is axiomatic, a stream cannot rise higher than its source. ''An attachment creditor can acquire no greater right in attached property than the attachment defendant has at the time of the attachment. He simply obtains by such attachment such rights as the debtor then had. Drake on Attachments, sec. 245.'' Star Drilling Machine Co. v. McLeod, 122 Ky. 564, 92 S. W. 558, 559, 29 Ky. Law Rep. 84. See Ætna Ins. Co. v. Commercial Credit Co., 252 Ky. 539, 67 S. W. (2d) 676.

Humphries' garnishment proceeding served only to subrogate his right to that of the Fitzpatricks as to the two banks. Metropolitan Life Ins. Co. v. Hightower, 211 Ky. 36, 276 S. W. 1063, 44 A. L. R. 1158; Bellamy v. Rogers, 219 Ky. 590, 293 S. W. 1069; Minter Homes Corp. v. Harris et al., 243 Ky. 211, 47 S. W. (2d) 1013. In the last-cited case, it was held that, in the absence of fraud, the garnishee was not personally liable for the fund paid out on the debtor's assignment before the commencement of the attachment proceedings, but before filing of supplemental ground upon which the judgment was finally sustained.

A controversy is engaged in in briefs of the parties as to sufficiency of the service of the garnishment. This topic is immaterial to a correct disposition of the issues. Even if the service thereof be considered proper and sufficient, Humphries only had an equity by virtue thereof on his debtor's estate. By an order entered at the time of the appointment of the receiver, and also after the service of Humphries' garnishment, it was decreed that the rent received from the land after the payment of taxes, insurance, etc., should be appropriated to the payment of the debt and costs of the Kentucky Joint Stock Land Bank, which was secured, not only by the mortgage on the land, but on the rent. In effect and in essence this was at that time the application of the doctrine of the marshalling of assets.

Without the rule that the attaching creditor can acquire no rights greater than his debtor, the equity of the Traders' National Bank arising from the order appropriating the rent to the payment of the debt, interest, and costs of the Kentucky Joint Stock Land Bank, is superior and prior to whatever lien Humphries had by the service of his garnishment. His equity cannot prevail against an elder equity, for, as between mere equities, that which is prior in time is regarded as best, and takes precedence over that which may be subsequently created. This principle protects the Traders' National Bank in its right to the rent as against Humphries' attachment lien, and it is consonant with the principle that an attaching creditor obtains by his attachment only such right as the debtor then had in the attached property or the debt garnished.

The judgment awarding the Traders' National Bank the benefit of the doctrine of marshaling assets being in harmony with our views, it is affirmed.