## Huff et al. v. Russell et al.

(Decided March 2, 1937.)

516

CLAUDE E. SMITH and W. H. BARNES for appellants.

M. L. HEAVRIN and C. E. BYRON for appellees

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming in part and reversing in part.

This action originated in the Daviess circuit court on October 20, 1932, when Dewey Huff, Bert Edwards, James E. Lowe, Herbert O. Lowe, Dick Miller, John Ross, and William Ross by petitions in equity, as amended, sought to recover of S. H. Russell the respective amounts $193.15, $772.62, $386.31, $356.31, $386.31, $1,015.84, and $386.31. They alleged in substance that in 1931 they entered into a joint adventure with H. S. Russell pursuant to a contract with him for the development of certain oil lands on which he held leases whereby in consideration of specified interests in the leases to be assigned to each of them, each of the defendants were to perform certain services or furnish materials in the drilling and development of the leases; that S. H. Russell sold and transferred the leases in question to A. J. Weideman; that the net consideration paid to Russell after deducting indebtedness incurred in the developing of the leases was $11,000 out of which Russell paid to each of the plaintiffs certain sums leaving the balances sued for due. It was further alleged that A. J. Weideman, who was made a party defendant, executed notes to Russell for the balance of the purchase price for the leases and he was called upon to answer and set up to what extent he was indebted to Russell.

On October 21, 1932, Dewey Huff filed his petition in the same court against S. H. Russell seeking to recover the sum of $556.70 on account.

On October 21, 1932, J. B. Taylor & Sons, Inc., filed its petition in the same court against S. H. Russell seeking to recover on a note for $202.26. In each of the actions grounds for attachment were pleaded and orders of attachment which issued in each of the cases to Ohio county were levied upon two drilling machines with appliances and attachments and also upon a one-half undivided interest in two oil leases known as the Greer and Midkiff leases as the property of S. H. Russell and lis pendens notices were filed in

the office of the county court clerk of Ohio county. An order of attachment which issued to Daviess county was levied on an oil lease and a mast pole or derrick used in connection with the drilling machines.

Thereafter, upon motion of plaintiffs, the two later actions were transferred to the equity docket and the three cases consolidated. Plaintiffs in the consolidated actions filed a number of amended petitions to which we shall refer only when and in so far as they are pertinent to the disposition of any question presented for decision. Summonses which issued were duly served upon A. J. Weideman, and, according to the sheriff's returns, S. H. Russell could not be found and upon proper affidavit a warning order attorney was appointed in each case to notify him of the nature and pendency of the action.

On September 21, 1932, S. H. Russell, for a recited consideration of $1,000 in payment for labor and pumping on the leases, executed and delivered to J. M. Russell a bill of sale for the two drilling machines with equipment and attachments levied upon in the consolidated actions. This instrument was lodged and put to record in the county court clerk's office of Daviess county on November 1, 1932. On September 19, 1932, S. H. Russell assigned and transferred to Sol Rudolph his one-half, undivided interest in the Ohio county leases later levied upon in the consolidated actions, which transfer and assignment was lodged for record in the clerk's office of the Ohio county court on October 31, 1932.

On January 12, 1933, it was adjudged that S. H. Russell was indebted to each of the plaintiffs in the sum sued for, the attachments sustained, and the property levied upon directed to be sold to satisfy the attachment liens.

Thereafter the American Glycerine Company, a corporation, filed its petition to be made a party to the consolidated actions; alleged that it had filed its petition in the Ohio circuit court seeking judgment on a note against Russell for $1,331.37 with interest, and that it caused an order of attachment to be issued and levied upon interests of S. H. Russell in the oil and gas leases attached in the consolidated actions and had filed lis pendens notices in the clerk's office of the Ohio

county court; that by reasons of the attachment it had a lien on such oil leases. It prayed that it be made a party defendant and that its petition be treated as its answer in the consolidated actions and that the judgment and order of sale of January 12, be set aside and held for naught. Thereupon an order was entered setting aside the judgment and order of sale.

By amended petition Sol Rudolph and the Ohio Oil Company were made parties defendant in each of the consolidated actions and A. J. Weideman was made defendant in the last two of the actions. It was alleged in effect that the Ohio Oil Company was purchasing the oil from the Midkiff and ·Greer leases and under transfer or division orders was paying or would pay the proceeds to the persons unknown and it was asked that it be restrained from so doing; that since the filing of the consolidated actions, Sol Rudolph was setting up claim to the one-half interest of S. H. Russell in the oil leases. Sol Rudolph filed a special demurrer to the petitions as amended on the ground that the Daviess circuit court had no jurisdiction of the subject of the action and on May 16, 1933, by agreement of parties, the consolidated actions were removed and transferred to the circuit court of Ohio county to there stand for further orders, adjudication, trial, and final disposition as though originally instituted in that county and that the attachment sued out be treated as effective as if sued out in the Ohio circuit court.

By intervening petition, answer, cross-petition, etc., J. M. Russell set up a bill of sale hereinbefore referred to and alleged that thereunder and before the filing of the actions he took the title to and was the owner and in possession of the property described therein. He asked that the several attachments in so far as the drilling machines, appliances, and equipment were concerned be discharged.

By answer, cross-petition, etc., Sol Rudolph controverted the material allegations of the petitions except the grounds for attachment, set up the transfer and assignment of the one-half undivided interest of S. H. Russell in the leases to him and alleged that the transfer was made in good faith and for a valuable consideration paid in cash to S. H. Russell and without any notice or knowledge on his part of any fraudulent intent or purpose of S. H. Russell in making the trans-

fer; that by reason of the transfer and assignment in the circumstances pleaded his title acquired thereby was paramount and superior to any claim of plaintiffs. He further alleged that at the time of the institution of the actions and the levying of the attachments, he had title and was in actual possession of the one-half undivided interest on the leases transferred and assigned to him by S. H. Russell.

In amended petitions and in reply, plaintiffs attacked the bill of sale to J. M. Russell and the transfer and assignment to Sol Rudolph as fraudulent and preferential and an attempt to prefer J. M. Russell and Sol Rudolph as creditors of S. H. Russell over other creditors and that same operated as an assignment of all of his property for the benefit of his creditors.

On final hearing it was adjudged that S. H. Russell was indebted to each of the plaintiffs in the sums sued for, but it was further adjudged that the assignment executed by S. H. Russell to Sol Rudolph on September 19, 1932, which purported to convey to Rudolph the one-half undivided interest of Russell in and to the Greer and Midkiff leases was a good and valid assignment and Rudolph thereby acquired title to the one-half undivided interest of S. H. Russell free of any claim or right of the plaintiffs or either of them to a lien on or any equity therein; that none of the plaintiffs or the American Glycerine Company by virtue of their attachments obtained any right to or equity or interest in the one-half undivided interest in the leases transferred by Russell to Rudolph, and that the petitions as amended in so far as they sought to have the assignment from Russell to Rudolph adjudged void and of no effect be dismissed and plaintiffs take nothing thereby; that the grounds for the attachments be sustained, but that the attachments levied on such one-half undivided interest in the leases be discharged. It was further adjudged that the petitions of each of the plaintiffs in so far as they sought to be adjudged a lien on the one-half undivided interest in the oil leases be dismissed, and that the petition seeking to enjoin the Ohio Oil Company from paying any person proceeds arising from the sale of the oil from such undivided interest in the leases be dismissed; that the Ohio Oil Company make a report showing all moneys in its hands arising from the sale of petroleum from the leases

since the institution of the action; and that same be paid to Sol Rudolph or his attorneys.

As to the issues between the plaintiffs and defendant J. M. Russell, the grounds of attachment were sustained and it was adjudged that the execution and delivery of the bill of sale from S. H. Russell to J. M. Russell in payment for a pre-existing indebtedness was made by S. H. Russell in contemplation of insolvency and with a design to prefer J. M. Russell as a creditor to the exclusion of other creditors of S. H. Russell and that the sale of such drilling machines and equipment operated as an assignment and transfer of same for the benefit of the creditors of S. H. Russell.

Dewey Huff, John Ross, and Bert Edwards are appealing. William Ross, Dick Miller, James and Herbert Lowe, and J. M. Taylor & Sons have entered a motion for appeal since the amounts in controversy as to each of them is less than $500.

As grounds for reversal, it is first argued that because the attachments were levied on the drilling machinery and the one-half undivided interest of S. H. Russell in the Greer and Midkiff leases without any notice, knowledge, or information on the part of plaintiffs of the sale or unrecorded transfer or conveyance thereof, appellants under the provisions of section 496, Kentucky Statutes, are entitled to have the attached property subjected to the satisfaction of their indebtedness.

The section of the statute invoked reads:

"No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage shall be acknowledged or proved according to law and lodged for record.

"The word 'creditors' as used herein shall include all creditors irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary conveyance."

This section as originally enacted has been amended by the addition of the last paragraph thereof. The word "creditors" contained in the section as amended

has been construed by this court to mean subsequent creditors, secured or unsecured, and such antecedent creditors as may at any time prior to the recording of the deed or other conveyance have acquired or secured some equity in the property. See Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833; Larimore & Perkins v. Perkinson, 208 Ky. 382, 271 S. W. 69.

In Reynolds v. Sizemore, 233 Ky. 122, 25 S. W. (2d) 48, it was held in effect that a creditor who obtained and caused an attachment to be levied on his debtor's land before a purchaser of the land had recorded title bond or had acquired possession of the land, the creditor having no notice of the purchaser's interest, acquired superior right to appropriate the property against the purchaser to the extent that it could be appropriated as against the vendor.

In the case of Peck et al. v. Trail, 251 Ky. 377, 65 S. W. (2d) 83, it was held that an attachment placed in the sheriff's hands on January 20 bound the debtor's property from that date and that the attaching creditor had an equity in the property superior to a mortgage given prior to the attachment, but not recorded until February 10, notwithstanding the fact that the attaching creditors' lien was not perfected by levy. See, also, Calloway v. Howard, 247 Ky. 730, 57 S. W. (2d) 677; Bradshaw v. Dunlap et al., 217 Ky. 644, 290 S. W. 501, and cases referred to in the opinions cited.

In the first two actions, attachment had been placed in the hands of the sheriff and levied and lis pendens notices had been filed in the clerk's office before the assignment of the one-half undivided interest in the lease from S. H. Russell to Sol Rudolph was filed for record and as clearly established by evidence, before plaintiff had knowledge or notice of the sale or assignment of the leases.

The evidence that Sol Rudolph and others associated with him but whose names did not appear in the transaction paid valuable and substantial consideration to S. H. Russell for the transfer and assignment of his one-half undivided interest in the leases and that they had no notice or knowledge of any ulterior motive upon the part of S. H. Russell is practically conclusive, however, under the statute as consistently construed by this court, we are constrained to hold that

appellants, other than J. B. Taylor & Sons, by the levy of their attachments before the assignment and transfer of the leases was filed for record acquired a superior right to have the interest in the leases appropriated to the satisfaction of their debts, unless their attachments were void as is argued by counsel for appellees. It is argued by counsel for appellees that the debts of the several plaintiffs in the original petition as amended are separate and distinct and that the statement of the ground that the debtor did not have sufficient property subject to execution to satisfy plaintiffs' debts was fatally defective because they are treated in the aggregate and not separately. Obviously, appellees are correct in the contention that the debts were separate and distinct, however, we cannot concur in the conclusion of counsel for appellees respecting the correct interpretation of the allegations of the petitions since the several claims of the debtors were treated separately in every particular.

We find no merit in the further contention that by filing an amended pleading attacking the transfer of the drilling machinery and the interest in the oil leases as preferential, appellants abandoned their action to subject the property to the satisfaction of the claims under attachments.

Counsel for appellees also attack the sufficiency of the lis pendens notices. We have examined these notices and find them in substantial conformity with the requirements of section 2358a-2, Kentucky Statutes, however, we need not determine this matter, since, if in any circumstances it would be material, it would not be so in this instance because the evidence clearly discloses that Mr. Rudolph had actual notice of attachments before he filed or caused the transfer and assignment to be recorded. Concerning the attack on the sufficiency of the evidence to sustain the grounds of attachment, it may be said that a recital of the evidence would serve no good purpose and would unnecessarily extend our opinion. We have carefully considered the evidence and conclude that it does amply support the grounds of attachment.

Attack is made on the affidavit for attachment in the case of J. B. Taylor & Sons on the ground that it only states in substance that "plaintiff verily believes that he verily believes that he ought to recover," etc.

Similar affidavits have been condemned as defective and insufficient in the cases of Daffron v. Smock, 247 Ky. 98, 56 S. W. (2d) 712, 713; Kengreen Gas Utilities Corp. v. Crozer, 244 Ky. 440, 51 S. W. (2d) 262; Colovas v. Allen Motor Co., 242 Ky. 93, 45 S. W. (2d) 809. Furthermore, an officer of this corporation who was also the principal stockholder testified that about the time the action was instituted he made investigation and received knowledge of the transfer of the leases. While the witness would not state positively whether he received this information before or after he filed the action and sued out the attachment, this court in the case of Calloway v. Howard, 247 Ky. 730, 57 S. W. (2d) 677, held in substance that the burden was upon an execution creditor (and the same would apply to an attaching creditor) to both allege and prove that at the time he acquired his lien he had no notice or knowledge of the prior conveyance of the property levied upon to another. To the same effect, see Sears, Sheriff, v. Cain, 242 Ky. 702, 47 S. W. (2d) 513. It is obvious and we are constrained to hold that J. B. Taylor & Sons failed to meet this burden.

It is finally contended by appellee Rudolph that even though the transfer and assignment to him of the interest in the oil leases had not been recorded at the time of the levy of the attachments, appellants cannot prevail because at the time the attachments were sued out and levied, he was in actual possession of the one-half undivided interest of S. H. Russell in the leases under the transfer and assignment. The evidence shows that prior to the transfer and assignments from S. H. Russell to Rudolph they owned the Greer and Midkiff leases jointly. He lived in Birmingham, Ala., and neither he nor S. H. Russell occupied or exercised active control over the leases, but employed J. M. Russell to operate and look after the leases for them. After the transfer, Rudolph did not come to Ohio county until he received notice that the attachments had been levied upon the property. He allowed J. M. Russell to continue on as he had in control of the operation of the leases without even notifying him that he had purchased the interest of S. H. Russell. In such circumstances, we are constrained to hold that there was no such manifest change in possession or ownership of the leases as would bring constructive or other notice to appellants of Rudolph's claim of possession to the

undivided one-half interest of S. H. Russell in the leases. See Calloway v. Howard, supra; Stone v. Keith, 218 Ky. 11, 290 S. W. 1042. We further conclude that under the proven facts and circumstances the chancellor correctly adjudged that the transfer of the drilling machinery with attachments and equipment to J. M. Russell operated as an assignment for the benefit of the creditors of S. H. Russell.

Wherefore, the motion of J. B. Taylor & Sons for appeal is denied and the judgment affirmed as to it. As to appellants William Ross, Dick Miller, James and Herbert Lowe, the motions for appeal are sustained and as to them and Dewey Huff, John Ross and Bert Edwards, the judgment is reversed with directions to enter judgment in conformity with this opinion.