ESTATE OF SNELL: GILBERT and another, Executors, Appellants, vs. CRANE and others, Respondents.

*March 16—April 12, 1938.*

For the appellants there were briefs by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, and oral argument by *Edward J. Dempsey*.

For the respondents except the minors there was a brief by *Thompson, Gruenewald & Frye* of Oshkosh, attorneys for Lillian Felker Crane and Charles W. Felker, and *Owens & Owens* of Chicago, Illinois, of counsel; *Velte & Molzow* of Neenah, attorneys for Sarah Felker Gresham; and *Gaylord C. Loehning* of Neenah, attorney for Ralph Walbrun, and oral argument by *Robert R. Thompson* and *Miriam L. Frye*.

A brief was filed by *Ed M. Hooper* of Oshkosh, guardian *ad litem* for the respondents Charles Philip Gresham and Walter Gresham.

MARTIN, J. This appeal is only from that part of the judgment of the county court requiring that all of the proceeds of the sale of the real estate devised by said will and all of the cash balance that may remain after payment of the balance of administration expenses be applied to the payment in full of the cash legacies instead of to the payment in

part of said legacies, and to the accumulation in part of the trust fund created by said will. The appellants contend:

(1) That all the proceeds of the homestead and the cash balance be applied to the satisfaction of the trust fund created by paragraph 8 of the will before appropriating any dividends from the stock of the Gilbert Paper Company or the National Manufacturers Bank of Neenah thereto, or before any shares of said stocks could be sold to establish said trust fund.

(2) Or as an alternative to the foregoing, that the proceeds of said real estate and said cash balance, if any, be distributed to the general legatees and to Albert C. Gilbert, trustee of the trust fund, proportionately.

The respondents, the general legatees, except the two minors, Charles Philip Gresham and Walter Gresham, contend:

(1) That none of the proceeds of the sale of the real estate nor such cash balance on hand as there may be can be applied to the accumulation of the trust fund; and

(2) That there can be no abatement of the cash bequests, (a) $10,000 to Lillian Felker Crane; (b) $2,000 to Charles W. Felker; (c) $500 to Ralph Walbrun; (d) $5,000 to Sarah Felker Gresham, so long as it is possible to accumulate the trust fund by sale of the Gilbert Paper Company or bank stock or out of future dividends that may be paid thereon.

On behalf of the two minors, it is contended that the part of the judgment appealed from should be reversed and the executors directed to pay over to Albert C. Gilbert, trustee, all dividends on Gilbert Paper Company stock and National Manufacturers Bank stock, over and above the $4,000 annuity to the husband, until the $50,000 trust is accumulated; and when said $50,000 trust is accumulated and paid over to the trustee, to pay the other cash legacies mentioned above, totaling $17,500, with interest, out of the proceeds of the real estate and the cash on hand after the payment of the

balance of administration expenses, said legacies to abate *pro rata* in the event that said funds are insufficient to pay them in full.

In the written opinion filed by the county judge, construing that part of the will in question, it is said:

"It seems clear to me that the proceeds of the real estate and the cash balance on hand must first be used to pay the cash legacies [those above mentioned, totaling $17,500]. The balance could be used toward the payment of establishing the $50,000 trust fund for the benefit of Sarah Felker Gresham, because at the time of the making of this will the principal property of the decedent was the stock owned by her in the Gilbert Paper Company and the stock owned by her in the National Manufacturers Bank of Neenah. The dividends received from the stock of the Gilbert Paper Company during the years of 1926 to 1935, inclusive, were large. In 1934 the dividends were $29,050 and in 1935 they were $29,050. In 1931, the year she made her will, the dividends were $20,750, and she felt that she could create a trust fund of $50,000 for her sister, Sarah Felker Gresham, easily, and also an annuity to her husband out of the dividends from these stocks without the sale of these stocks, and that this $50,000 could be accumulated in a very short time if she did not have money enough left in her estate after payment of all claims and cash legacies. Each one of these legatees were equally dear to her and she devised a scheme whereby the $50,000 could be accumulated from the dividends from the stock of the Gilbert Paper Company and the National Manufacturers Bank of Neenah."

The bequests above mentioned, amounting to $17,500, are general legacies. The bequests of certain household furniture and furnishings to Albert C. Gilbert, certain jewelry to Lillian Felker Crane, and a part of the household furniture and furnishings, wearing apparel, jewelry, personal effects, and ornaments to Sarah Felker Gresham, are all specific bequests, as are also the shares of stock in the Gilbert Paper Company and the National Manufacturers Bank of Neenah to Albert C. Gilbert, the latter, however, being subject to the charges against said shares of stock and dividends

thereon in favor of the annuity to Arthur B. Snell and the accumulation of the trust fund. See *Will of Hinners,* 216 Wis. 294, 257 N. W. 148, and cases cited. The bequest of the Paper Company stock and the bank stock to Albert C. Gilbert, subject to certain conditions, to the payment of the annuity and the establishment of the trust fund, does not cause the bequest to lose its character as a specific bequest. *In re Banfield's Estate,* 137 Or. 256, 299 Pac. 323, 3 Pac. (2d) 116; *In re Low's Estate,* 103 N. J. Eq. 435, 143 Atl. 222. The dividends on this stock go to the legatee from the date of the death of testatrix. 3 Woerner, American Law of Administration, pp. 1512, 1517; *Gordon v. James,* 86 Miss. 719, 39 So. 18; *Loring v. Woodward,* 41 N. H. 391; *Palmer v. Estate of Palmer,* 106 Me. 25, 75 Atl. 130.

It appears that the trust estate accumulated to date amounts to $20,000. This is in the hands of Albert C. Gilbert, as trustee. The executors have on hand from the sale of the real estate $12,196.55. To this latter amount should be added the estimated $5,000 to which reference has been made, which the executors now believe is an overestimate. By paragraph 10 of her will, the testatrix directed that in the event she had not sold the real estate during her lifetime, "that my executors do sell the same, and the revenue derived therefrom be used to pay the bequests herein, *and the accumulation of the trust fund* for the use of my sister, Sarah Felker Gresham, by and under their authority as provided in paragraph twelve hereof."

Paragraph nine of the will provides:

"I bequeath and devise unto Albert C. Gilbert, son of my late husband, William M. Gilbert, the large oriental rug in bedroom; silk prayer rug in front room; piano and two tiffany lamps; marble statue and stand; and all the books constituting the library in my home on Forest avenue, city of Neenah; also all stock in the Gilbert Paper Company and all bank stock owned by me, and in order to provide for the annuities herein, I do order and direct that the bequest of

the stock in the Gilbert Paper Company and all bank stock be retained during the continuance of said annuities, or at least so much thereof as will provide for the payment of said annuity to my husband, Arthur B. Snell, in the hands of my executors named in said will, *and after the accumulation of the trust fund in paragraph eight hereof and the termination of said annuity to my husband, then to be distributed to Albert C. Gilbert.*"

Paragraph eight provides for the $50,000 trust fund for Sarah Felker Gresham and her children. It further provides:

". . . Said trust fund in no event to be disturbed or diminished during the lifetime of my sister, Sarah Felker Gresham; the said sum of fifty thousand dollars ($50,000) to be accumulated, if possible, without the sale of the Gilbert Paper Company stock or bank stock in my possession and same may be accumulated, if possible, out of dividends from either of said stocks."

The judgment of the county court construing the will provides:

"That the proceeds of the real estate and the cash balance on hand after payment of the balance of administration expenses *be first used to pay the cash legacies,* to wit: $10,000 to testatrix's sister, Lillian Felker Crane, $5,000 to her sister, Sarah Felker Gresham, $2,000 to her nephew, Charles Felker, and $500 to Ralph Walbrun, total legacies of $17,500.

"That the balance of said proceeds of the real estate and cash balance on hand, if any, after the payment of cash legacies, be assigned to Albert C. Gilbert, to be applied by him on the $50,000 trust fund for Sarah Felker Gresham and her children, but that said cash legacies are to abate *pro rata* in the event the said funds are insufficient to pay them in full."

This interpretation is contrary to the plain terms of the will. If the testatrix wished or intended to so provide, no doubt she would have done so. The will specifically provides that the revenue derived from the sale of the real estate be used to pay the bequests and the accumulation of the trust

fund. The testatrix was very specific that in no event should the trust fund be disturbed or diminished. She made it equally clear that the trust fund be accumulated, if possible, without the sale of the Paper Company or bank stock. She received all of this stock from her former husband, William M. Gilbert, either by gift or under his will. She apparently appreciated that the Gilbert Paper Company was almost entirely a family organization, organized by her husband, William M. Gilbert, his brother, and father, and that Albert C. Gilbert had succeeded his father as president of the family corporation. In any event, whatever her motives, she clearly intended to avoid the necessity of a sale of either the Paper Company stock or the bank stock, and she did specifically provide that, in the event of her not having sold the real estate during her lifetime, that the executors should sell same, and that the proceeds of the sale be used to pay her bequests and for the accumulation of the trust fund. This unmistakable language cannot be ignored.

The respondents argue that the annuity and trust fund is made a specific charge against the Paper Company and bank stock, and that the cash legacies should be paid in full before permitting the trust fund to participate in the proceeds from the sale of the real estate or in any cash balance which may remain on hand after payment of the balance of the administration expense. To adopt this theory, we must ignore the specific direction made by testatrix in paragraph ten of her will, that the revenue derived from the sale of the real estate be used "to pay the bequests herein, and the accumulation of the trust fund. . . ." It may be assumed, in view of the size of the estate, that the testatrix believed that the assets, including the income from stock dividends, would be sufficient to pay all legacies in full, leaving the Paper Company and bank stock intact for Albert C. Gilbert.

The respondents further contend that the doctrine of marshaling assets and securities applies to legacies charged on

different funds and properties; thus, where one legatee can resort to two funds and another to one of them, the former shall not be allowed to resort in the first instance to that which is the sole reliance of the latter legatee. The facts in the cases cited in support of this theory are clearly distinguishable from the facts in the instant case. However, the bequest to Albert C. Gilbert constitutes a specific legacy. The other legacies, aggregating $17,500, are all general legacies.

"The doctrine of marshaling [assets] being a rule of equity and having its foundation in principles of natural justice, its application will not be inforced when it would so operate as to work substantial injustice or injury to any party in interest. Thus marshaling will not be applied to the detriment of a third person having an equity equal or superior to that of the person seeking to invoke the rule." 19 Am. & Eng. Encyclopædia (2d ed.), p. 1284; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *In re Meyer,* 78 Wis. 615, 623, 48 N. W. 55; *Humphries v. Fitzpatrick,* 253 Ky. 517, 69 S. W. (2d) 1058, 1061.

A legatee having a specific legacy occupies a position superior to legatees having only general legacies. Hence, under the above authorities, the marshaling of assets could not be applied to the facts in the instant case.

We must hold that the proceeds of the sale of the real estate and whatever cash balance may be on hand after payment of the expenses of administration must be distributed proportionately to Albert C. Gilbert, trustee, and to each of the general legatees.

*By the Court.*—That part of the judgment appealed from is reversed, and cause remanded with directions to enter judgment ordering the executors to distribute the proceeds of the sale of the real estate and any cash balance that may remain after payment of the expenses of administration proportionately to Albert C. Gilbert, trustee, and to each of the general legatees.