## Meade et al. v. Wells et al.

March 18, 1949.

W. A. Johnson for appellants.

Wells & Wells for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This is a contest between appellants and appellees as to who has a prior and superior lien on certain property.

On November 16, 1946, P. J. Scott executed his promissory note in the sum of $500 to the Second National Bank, Paintsville, Kentucky, with appellees, C. J. Wells and C. V. Sturgill, as accommodation endorsers thereon. The note was due and payable 90 days after date. On January 14, 1947, a month before the maturity date of the note, Wells and Sturgill filed suit against Scott to recover on the note. The action was brought pur-

suant to Section 237 and following of the Civil Code of Practice, which authorizes a suit by a surety against his principal before liability matures. They obtained a general order of attachment, which was duly served by the sheriff, and certain mining materials and supplies were levied upon.

Three days after the above suit was filed T. C. Meade and Eva L. Meade, partners doing business as Meade & Company, appellants herein, brought suit against P. J. Scott to recover $372.55 for merchandise sold under a conditional sales contract and delivered to Scott between the dates of November 23 and December 31, 1946. They alleged oral agreement between the Meade Company and Scott that payment for the merchandise was to be made on or before December 31, 1946, and that in the event Scott failed to pay, the Meade Company, having retained title under the parol conditional sales contract, was to repossess the merchandise. They further alleged that Scott had departed from the State with the intent to defraud his creditors and that he had abandoned the property belonging to the Meade Company on the premises of the Millers Creek Coal & Cooperative Company at Whitehouse, and they asked for and obtained a writ of delivery for the merchandise sold and delivered to Scott. The order of delivery was placed in the hands of the deputy sheriff of Johnson County, and was duly executed by delivering to the Meade Company those articles of merchandise which had been sold by Meade & Company.

Thus it will be seen that the sheriff, under the writ of delivery, took possession of certain property of P. J. Scott which he had theretofore levied upon by virtue of the general order of attachment in the suit of Wells and Sturgill v. Scott.

Motion was filed by Wells and Sturgill that the two cases be consolidated, heard, and determined together. After consolidation, Wells and Sturgill filed an intervening petition in the case of T. C. Meade and others against Scott, wherein they prayed that their attachment lien be adjudged prior and superior to the claim of T. C. Meade and others.

The cause was heard and the court adjudged that

Wells and Sturgill had a prior lien on the property. The Meades prosecute this appeal.

KRS 382.270 provides:

"No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal property shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage is acknowledged or proved according to law and lodged for record. As used in this section 'creditors' includes all creditors irrespective of whether or not they have acquired a lien by legal or equitable proceedings or by voluntary conveyance."

It is argued by appellants that the above has no application whatsoever to the facts of these consolidated cases because at the time of the loan Scott had not obtained this particular merchandise from the Meade Company and there was no connection between the loan or the subsequent purchase of the merchandise. Consequently, Wells and Sturgill are not purchasers for value, nor did they have any equity in the merchandise.

They insist that by virtue of the conditional sales contract the Meade Company was the owner and had constructive possession of the merchandise upon abandonment by Scott. In support of that theory they cite Glass v. Cundiff & Longest, 167 Ky. 760, 181 S.W. 638.

It is further insisted that Wells and Sturgill had no greater right in the property than Scott had at the time of the attachment. In support of that view Batesville Casket Company v. Fields, 288 Ky. 104, 155 S.W.2d 743, 746, is cited, wherein we held:

"An attaching creditor has no greater right in the property attached than the debtor had at the time of the attachment. Humphries v. Fitzpatrick, 253 Ky. 517, 69 S.W.2d 1058."

It is further insisted that since the merchandise was fraudulently obtained from the Meade Company, the vendor's lien would certainly be superior to the attachment lien.

To adopt the theory of appellants that attaching creditors stand in the shoes of their debtors would entirely emasculate the requirements of our recording

statutes. True, in the early case of Star Drilling Mach. Co. v. McLeod, 122 Ky. 564, 92 S.W. 558, it was held that an attaching creditor can acquire no greater right in attached property than the debtor had at the time of the attachment, and that all equities against the property at the time of the attachment, whether recorded or not, were superior to the attachment lien. However, in the later case of Besten & Langen et al. v. Peoples' Messenger & Parcel Delivery Co's Assignee, 99 S.W. 631, 30 Ky. Law Rep. 787 it was pointed out that as the recording statute then in effect was construed to protect subsequent creditors, such subsequent creditors were entitled to the protection of the recording act.

This court in the Glass v. Cundiff & Longest case above, relied upon by appellants, followed the early decisions and held that unrecorded equities were good as against antecedent creditors who had obtained attachment liens. In 1916 amendment was passed extending the protection of the recording act to include all creditors.

In Mason & Moody v. Scruggs, 207 Ky. 66, 268 S.W. 833, 834, dealing with the question of the position of an attaching creditor, without notice of an unrecorded lien, the court said:

"* * *In 1916 the Legislature amended the foregoing statute by adding thereto the following:

" 'The word "creditors" as used herein shall include all creditors irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary conveyance.'

"We have, in this case, presented to us squarely, for the first time since its passage, the effect to be given to this amendment to the statute. After a careful consideration of the matter, with special reference to the evils sought to be remedied and the evident purpose of the Legislature in passing this amendment, we have come to the conclusion that the expression 'all creditors' therein means subsequent creditors, whether they be secured or unsecured, and such antecedent creditors who at some time prior to the recording of the mortgage or deed of trust have secured some equity in the property."

In Peck v. Trail, 251 Ky. 377, 65 S.W.2d 83, wherein an order of attachment was placed in the hands of the

sheriff, who levied on Peck's property prior to the time the mortgage was recorded, we held that the equity in the property, by reason of the attachment, was superior to the mortgage. See also Huff v. Russell, 267 Ky. 515, 102 S.W.2d 984, and Calloway v. Howard, 247 Ky. 730, 57 S.W.2d 677.

Considerable comment is made in brief relative to the fact that the conditional vendor was defrauded by Scott "by procuring possession of said goods, wares and merchandise knowing at the time he was not going to pay for them." The court below very succinctly and correctly disposed of the matter in his opinion below:

"Without discussing the adequacy of the stipulation to establish a fraudulent conveyance, it is sufficient to point out that it supplied evidence only, and that not only did the Meades fail to allege fraud but they as well elected to waive the fraud, if any, by expressly basing their cause of action upon and thus affirming the oral conditional sales contract which they now argue was fraudulently obtained. They may not sue to enforce the contract, as they attempt here, and in the same breath and in the same suit insist that the contract be rescinded as fraudulent (Piersall v. Huber Mfg. Co., 159 Ky. 338, 167 S.W. 144; American Pure Food Co. v. [G. W.] Eliott & Co., 151 N.C. 393, 66 S.E. 451, 31 L.R.A.,N.S., 910; 18 Am.Jur. 160, Election of Remedies, Sec. 42)."

Appellants parted with the goods. They delivered possession to Scott, and under their alleged verbal conditional sales contract they did nothing to protect themselves. In 5 Am.Jur., Attachment and Garnishment, Section 849, the general rule is stated:

"Failure on the part of a chattel mortgagee, conditional seller, pledgee, or bailee to comply with any statute there may be as to filing or recording invalidates such instrument as against an attaching creditor where such creditor is within the meaning of the filing or recording law. The attachment creates a superior lien in such cases."

The court properly adjudged the attachment lien of appellees superior to the alleged vendor's lien of appellants.

Wherefore, the judgment is affirmed.