# Farmers & Merchants Bank Of Cherry Tree, Pa. v. Number Nine Coal Corporation.

November 1, 1949.

Belcher & Donan for appellant.

Hubert Meredith for appellee.

JUDGE KNIGHT—Affirming.

Appellee No. 9 Coal Corporation filed its petition in the Muhlenberg Circuit Court against the Southern Engineering Corporation, a foreign corporation and a non-resident of Kentucky, alleging the latter company was indebted to the plaintiff in the sum of $4000 represented by four notes of $1000 each, all of which were past due. The petition contained sufficient allegations to justify a general order of attachment against the non-resident defendant and since no defense was made to the suit, default judgment was entered on January 7, 1946, against the defendant for the amount prayed for in the petition, the grounds for attachment set up in the petition were sustained and the levy of the attachment on the property mentioned in the sheriff's return upheld, the question of the ownership of the property levied on and all questions of priorities of liens being reserved for future consideration. Included in the property levied on was 1—4 yard Model 3T Bucyrus Monagahan Dragline (or one 4-yard Monnigan Dragline) and other equipment used in connection therewith.

In the meantime appellant, Farmers and Merchants Bank of Cherry Tree, Pennsylvania, filed its intervening petition denying that the Southern Engineering Corporation was the owner of the 4-yard Monnigan Dragline referred to above then located in Muhlenberg County, Ky., and levied on by the appellee, and alleging that this intervening petitioner was the owner of same by virtue of a sale and transfer to it on April 27, 1945.

Appellee filed a reply denying the allegations of the intervening petition and after submission on the pleadings, exhibits and proof on the issues raised, a judg-

ment was entered on May 30, 1947, adjudging that as between the plaintiff, appellee herein, and the intervening petitioner, appellant herein, the latter has no title or ownership to said property and that the attachment of the plaintiff is prior and superior to any and all claims of ownership of the property described in the intervening petition, and directing the master commissioner to sell the property above described to satisfy appellee's lien thereon. It is from this judgment that appellant prosecutes this appeal.

The question to be decided is therefore the ownership of the dragline involved in this litigation at the time the attachment was levied in favor of appellee, and appellant contends that is the only question for our decision. In addition appellee contends that the instrument under which appellant claims title was not a recordable instrument, was not recorded in Pennsylvania or Kentucky, and appellee had no notice constructive or otherwise of the claim of appellant.

The testimony in the case, all taken in Pennsylvania, is in substance that the dragline equipment here involved was owned by the appellee coal company and was located at one of its mines at Pittston, Penn. The equipment was for sale and the company made that fact known to Frank McCormick, a dealer in such equipment, now deceased, with the suggestion that he secure a prospect for its sale. He interested the officers of the Southern Engineering Corporation, who dealt directly with the officers of the coal company, with the result that a sale of the equipment by the coal company to the engineering corporation was agreed upon at a price of $35,000 to be paid in cash upon transfer of the property. A down payment of $2000 was made by the purchaser and it was agreed between the parties that the equipment was to be dismantled at the mine where it was located, placed on cars and shipped to Greenville, Ky., where the engineering corporation had a contract for a strip mining operation where the equipment was to be used. The price above agreed on did not include the dismantling and loading of the equipment and this work was done by the seller for the buyer at an additional cost of $4000 and purchaser not having the cash to pay for this expense executed its notes to the coal com-

pany for this amount and it was to collect these notes that this suit was brought.

When the time came to take over the equipment the engineering corporation did not have the necessary funds and it was essential that its deal for the purchase money be financed. This was arranged in some way through the R. & S. Company of Johnstown, Penn. which was a partnership engaged in the equipment brokerage business. Mr. Rothstein, the active member of that firm, was dead when this suit began and his testimony was not available in this dispute. It seems to be the contention of the appellant that he was an agent of the appellee although there is no evidence to sustain that contention, and it is appellant's theory of the case that a bill of sale must have been executed by the appellee as owner of the equipment to the R. & S. Company although appellant could produce no proof of this due, as it says, to the death of Mr. Rothstein. At any rate, on April 24, 1945, the R. & S. Company as lessor executed to the Southern Engineering Corporation, lessee, an instrument generally referred to in this record as a "bailment lease" but designated in the instrument itself as a "lease agreement" covering the dragline and other equipment here involved. Under the terms of this lease the lessee agreed to pay a total rental of $42,118 of which $10,000 was to be paid in cash on signing of the lease and the balance of $32,118 rent was to be paid in monthly installments of $2676.50 each until all was paid and upon termination of the lease, the property was to be turned over to the lessee as full owner thereof upon payment of $1. Other details of the lease agreement to protect both parties need not be repeated here since they are not involved. It is sufficient here to say that this lease agreement was, on the day of its execution, assigned without recourse to the appellant bank which actually furnished the money and it is this lease agreement which appellant bank relies on in its claim to ownership of the equipment involved here. The appellant bank issued its check for $35,000 to the appellee coal company in payment for the equipment and the $2000 which the engineering corporation had deposited as a down payment was returned to that corporation.

It is established not only by the testimony of the officials of the appellee company but by the testimony

of Mr. Ruff, president of the engineering corporation, that there was no bill of sale covering the equipment executed by the seller, appellee coal company, to the buyer, the engineering corporation, nor is there any evidence in the record showing that the engineering corporation ever executed any bill of sale to the R. & S. Company and therefore there is nothing in the record to show that the R. & S. Company had any title to the equipment when it executed the lease agreement to the engineering corporation which was assigned by the R. & S. Company to appellant bank and which lease agreement is the basis of the bank's claim to ownership of the equipment. We think it is fairly established that the appellee coal company had no connection with the financing and no official knowledge of it though it probably had information that appellant bank was in some way financing the purchase for the engineering corporation. It was only interested in obtaining the cash for the agreed price of the equipment and which it did receive from the bank; the equipment was then released to the purchaser which shipped it to Greenville to itself as consignee under a bill of lading signed by the president of the engineering corporation. We think the title to this property passed by delivery from the appellee company to the engineering corporation upon the payment of the agreed purchase price and this title remained in the engineering corporation and was there when the attachment was levied by the appellee coal company. We do not think that appellant bank acquired ownership of the property under the lease agreement assigned to it even though it may have acquired a lien.

It is evident that the lease agreement here involved was a financing plan and the record indicates that it was the principal method of financing chattels in Pennsylvania at the time of this transaction. At that time there was no provision under Pennsylvania law for chattel mortgages such as are used in Kentucky, KRS 382.600 et seq., and most of the other states, although statutes permitting financing by chattel mortgages became effective in that state about July 1, 1945, 21 P. S. Pa. sec. 940.1 et seq.

But it was an instrument in the nature of a chattel mortgage in that the property was impressed by a lien to secure the money advanced on it and it would seem

that as to third parties our statutes as to such transactions are applicable. Meade v. Wells, 309 Ky. 748, 218 S. W. 2d 972, and cases therein cited. Otherwise it is a mere ''pocket lien'' of which third parties dealing with the owner of the property would have no constructive notice.

It is not necessary for us here to determine the rights as between appellant bank and the engineering corporation under the lease agreement. We only say that as between the appellant and appellee the attachment levied on the property by the latter is prior and superior to any claim of ownership of the property by appellant as set up in its intervening petition. The Chancellor having so held, the judgment is affirmed.