**In re BAY METRO GLASS CO., INC., Debtor.**

**Bankruptcy No. 84–01873.**

United States Bankruptcy Court, E.D. Wisconsin.

June 16, 1989.

John A. Muraski, Green Bay, Wis., for Kellogg–Citizens Nat. Bank.

Leon E. Jensen, Appleton, Wis., trustee.

John W. Volletz, Green Bay, Wis., for debtor.

DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

The equitable doctrine of marshaling rests upon the principle that a creditor hav-

13. *See,* n. 6, *supra.*

| $114.08 | surplus income per month |
| × 36 | months |
| $4,106.88 | available to creditors over the life of a chapter 13 plan. |

ing two funds to satisfy a debt may not by the application of them to a demand, defeat another creditor, who may resort to only one of the funds. *Meyer v. U.S.*, 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). In this case, the trustee filed a motion asking that the Kellogg–Citizens National Bank be required to "marshall its security" and thereby make assets of the bankruptcy estate, otherwise subject to the bank's security interest, available for unsecured creditors. The facts are not in dispute.

Having filed a petition under chapter 11, the debtor corporation had a plan confirmed by order dated January 24, 1985. The debtor was unable to complete the plan, and on September 11, 1987, the case was converted to a case under chapter 7.

Paragraph 9 of the plan provided:

Debtor shall provide to the Associated Kellogg Bank a perfected general security agreement covering the inventory, equipment and accounts receivable which the Debtor acquires or possesses subsequent to the filing of the petition in this matter on May 9, 1984; in addition, the individual corporate directors shall provide Associated Kellogg Bank with perfected third mortgages on their individual homesteads securing their personal guarantees to the Associated Kellogg Bank.[1]

The corporate officers had already provided the bank with a continuing written guarantee of the corporate debts, and on March 13, 1985, three of the officers and their spouses gave the bank $20,000 mortgages on their homes. The three mortgages, totaling $60,000, collateralized the officers' guarantee of three corporate notes on which the total balance now owing to the bank (not including attorney fees) is approximately $70,000. The trustee contends that the bank should look to these three mortgages before using the property of the bankruptcy estate to satisfy its claim.[2]

By agreement, the bank has liquidated the debtor's hard collateral and some receivables. It has accumulated $15,000, of which some $4,000 must be applied to a separate automobile note, and has a settlement offer of $6,200 on another receivable, leaving around $17,200 available to apply against the corporate debt.

Each mortgage, in a typewritten insertion, provides:

This mortgage is given pursuant to a confirmed plan of reorganization of Bay Metro Glass Co., Inc. in the U.S. Bankruptcy Court for the Eastern District of Wisconsin, Case No. 84–01873, and is given to secure that certain existing unlimited and continuing personal guaranty executed by the undersigned mortgagor [named] on February 15, 1983, wherein and whereby he guaranteed and continues to guarantee the payment to Kellogg–Citizens National Bank of the indebtedness of Bay Metro Glass Co., Inc. owing then and thereafter, and now and hereafter, to said Bank.

State and federal courts in Wisconsin have applied the equitable doctrine of marshaling. *In re Multiple Services Industries, Inc.*, 18 B.R. 635 (Bankr.E.D.Wis. 1982); *Moser Paper Co. v. North Shore Pub. Co.*, 83 Wis.2d 852, 266 N.W.2d 411 (1978). In *Moser Paper*, at 861, 862, 266 N.W.2d 411, the court said, "As a general rule before a court of equity will marshal assets and securities between two creditors, it must appear that (1) they are creditors of the same debtor, (2) that there are two funds belonging to that debtor, and (3) that one of them alone has the right to resort to both funds. [citing authorities] Thus, even though one creditor is secured by the debtor's surety while a second creditor is not, equity will not in the ordinary case compel the secured creditor to exhaust his remedy against the surety before proceeding against the principal debtor. 135 A.L.R. 738 (1941)."

---

**1.** Paragraph 10 of the plan provided that the corporate officers should each lend the debtor $10,000 and receive a junior security interest in the corporate assets.

**2.** A separate earlier note of the bank was similarly guaranteed by a corporate officer with his guarantee collateralized by a $15,000 certificate of deposit.

The funds sought to be marshaled in the *Moser Paper* case were the property of different debtors, and the trial court accordingly held that the doctrine of marshaling should not be applied. This ruling was reversed on appeal. Noting that the sureties on the corporate note had "pledged their residences to secure not only their note and their performance as sureties but the debtor North Shore's original $100,000 debt," the court said, "This distinction makes the rule stated in the above-cited annotation inapplicable. The cases contained in the annotation are cases where the surety has simply guaranteed the debtor's obligation. They stand for the proposition that, even though the surety is liable at law to pay the principal's debt, equity administers a more exact justice and will not normally permit the surety's property to be made to satisfy the principal debt when the principal's property will suffice." (at p. 862, 266 N.W.2d 411)

In the case at bar as in *Moser Paper*, the funds sought to be marshaled are the property of different debtors. Unlike *Moser Paper*, the collateral sought to be marshaled in this case secures only the guarantees—it does not secure the corporate debt to the bank. Accordingly, the doctrine of marshaling cannot be applied, and the trustee's motion must be denied.