**In re WM. PIETSCH CO., INC.**

**Bankruptcy No. 95–21279–MDM.**

United States Bankruptcy Court,
E.D. Wisconsin.

June 14, 1996.

John F. Waldschmidt, Oconomowoc, WI, for Trustee.

Andrew N. Herbach, Milwaukee, WI, for Creditor.

## DECISION

MARGARET DEE McGARITY,
Bankruptcy Judge.

### Introduction

This matter came before the court upon Firstar Bank Milwaukee, N.A.'s motion for relief from the automatic stay and for an order of payment of secured proceeds held by the chapter 7 trustee. The trustee objected to payment of those funds, asking that the court require the bank to marshal assets. Marshaling would require that the bank recover first from other assets securing the bank's claim that are owned by the principals of the debtor, which assets are not property of the bankruptcy estate, before resorting to proceeds of secured assets that are property of the estate. There are no material facts in dispute, and the parties agree that the issue may be decided by the court as a matter of law. Fed.R.Bankr.P. 7056, applicable in contested matters, Fed.R.Bankr.P. 9014. For the reasons stated below, the trustee's objection is sustained, and the court will require the bank to marshal assets before resorting to secured funds held by the trustee.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) and (K). This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

### Facts

The debtor filed a bankruptcy petition under chapter 11 on March 8, 1995. During the pendency of the chapter 11, this court entered an order for use of cash collateral and adequate protection while the debtor was operating as debtor-in-possession. The case was converted from chapter 11 to chapter 7 on July 25, 1995.

Firstar is a secured creditor of the debtor. There are two notes which are the subject of this dispute, one executed by the debtor on which approximately $54,000 is due, and one executed by Gary and Patricia Serwatt, principals of the debtor, on which approximately $108,000 is due. The parties agree that these notes are in default, thus maturing the bank's right to resort to the collateral. Each of the notes held by Firstar is secured by all of the debtor's assets pursuant to a general business security agreement, by mortgages on two pieces of real estate owned by the Serwatts (described below), and by a mortgage payable to the Serwatts by third parties and assigned to the bank.

A forbearance agreement, entered into on December 15, 1992, to forestall Firstar from foreclosing on its mortgages and on its General Business Security Agreement, cross-collateralized debts of the principals and the debtor corporation, including the two notes in question. This agreement (quoted in the bank's brief but not provided to the court) states in pertinent part:

Paragraph 4(d) states that in order to induce Firstar to refrain from exercising its rights against the Debtor and the Serwatts, the Debtor and the Serwatts represented and warranted to the Bank that "each of the Notes [the Notes referenced in the Recital Section A and J] are secured by the Security Agreements and the Mortgages."

Apparently, the forbearance agreement and underlying agreements cover after-acquired debts to Firstar incurred by either the corporation or the individuals, and it covers after-acquired assets of the corporation. One of the notes is dated after the

forbearance agreement, but as none of the parties attached any significance to that fact, the court will not. The assignment to the bank of the mortgage payable to the Serwatts was also made after the forbearance agreement.

The debtor's and the Serwatts' obligations to the bank are also secured by funds of the debtor. Firstar is holding an escrow account in the debtor's name, which it cannot apply to the indebtedness of the debtor until relief from the automatic stay is granted. The trustee is holding funds from the sale or collection of the debtor's various assets which are subject to the security interest of Firstar. The trustee's funds include approximately $80,000 from sale of the debtor's assets, $40,000 acquired upon collection of a receivable/account/general intangible of the debtor, and approximately $9,000 from other accounts receivable.

In addition to the debtor's funds, Firstar has security interests in the following: a mortgage on the Serwatts' real estate located at 2462–68 West Lisbon Avenue, which was appraised at $90,000 in 1994; a mortgage on the Serwatt's real estate located at 2454–60 West Lisbon Avenue, which was not included in the 1994 appraisal; and a mortgage in the amount of $38,000 granted by Terry Serwatt and Heather Hubing, payable to Gary and Patricia Serwatt and assigned to Firstar. A letter from the bank's counsel dated December 27, 1995, mentions a real estate value estimated on the city's tax bill of $58,079, but it is not clear which property this refers to. The trustee believes the unappraised property is worth more than the one appraised for $90,000. (Trustee's brief at 2 n. 1.) Property of the bankruptcy estate does not extend to any of the real estate or to the $38,000 mortgage.

In spite of this substantial cushion of security, Firstar has chosen not to foreclose on the Serwatt's real estate because of potential environmental problems, which, according to Firstar, have rendered the real estate of questionable value. Firstar obtained a Phase I environmental site assessment, which included recommendations for removal of certain potential contaminants, i.e., a 55–gallon oil drum, asbestos-containing shingles, and two 250–gallon oil tanks. The report also stated that an adjacent property may have contaminated the soil and groundwater. The cost of the proposed cleanup would be $10,110.

The trustee argues that because the entire debt owing to Firstar could possibly be satisfied out of nondebtor property, leaving ample funds for payment of administrative expenses and unsecured creditors, marshaling of assets is an appropriate remedy. Firstar contends that marshaling of assets is not available to the trustee because there are not two funds belonging to the debtor; here, one fund is owned by the debtor, and one fund is owned by Gary and Patricia Serwatt. Additionally, according to Firstar, marshaling would be inequitable because the environmental problem might significantly decrease the value of the real estate.

*Discussion*

1. *Traditional Doctrine of Marshaling*

■■■ Marshaling is an equitable doctrine designed to promote fair dealing and justice, usually between two secured creditors. *Meyer v. United States*, 375 U.S. 233, 237, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). The doctrine "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Sowell v. Federal Reserve Bank*, 268 U.S. 449, 456–57, 45 S.Ct. 528, 530, 69 L.Ed. 1041 (1925). A junior creditor may move to compel marshaling if the senior creditor is acting in such a way as to prevent the junior creditor from having its debt satisfied. The bankruptcy trustee assumes the role of the junior creditor by virtue of his avoiding power under 11 U.S.C. § 544(a)(1). The trustee's status as a party that may compel marshaling has been criticized, but it is well recognized in this district. *Matter of Multiple Services Industries, Inc.*, 18 B.R. 635 (Bankr.E.D.Wis.1982). Notwithstanding the fact that the junior creditor may have met the other marshaling requirements, marshaling will not be compelled if the senior secured creditor would be prejudiced. *See Matter of Dealer Support*

*Servs. Int'l, Inc.,* 73 B.R. 763, 766 (Bankr. E.D.Mich.1987).

 The *traditional* elements of marshaling are: (1) the existence of two creditors of the same debtor; and (2) the existence of two funds belonging to a common debtor; with (3) only one of the creditors having access to both funds; and with (4) the absence of prejudice to the senior secured creditor if the doctrine is applied. *Meyer v. United States,* 375 U.S. at 236–37, 84 S.Ct. at 320–21; *Victor Gruen Assoc., Inc. v. Glass,* 338 F.2d 826, 830 (9th Cir.1964). The proponent of marshaling has the burden of proving the elements of the marshaling doctrine by clear and convincing evidence. *See In re Vermont Toy Works, Inc.,* 82 B.R. 258, 313 (Bankr.D.Vt.1987), *rev'd on other grounds,* 135 B.R. 762 (D.Vt.1991).

The parties do not dispute the existence of two creditors of the same debtor. Furthermore, the parties acknowledge the existence of two funds, with only one of the creditors having access to both funds. The trustee and Firstar disagree, however, whether the "common debtor" requirement is met and whether the senior secured creditor would suffer prejudice if the doctrine is applied. The only equitable considerations advanced by the bank are the environmental concerns and the necessity of legal action to foreclose, both of which can be addressed as a matter of law as the court was provided with sufficient undisputed information.

 Traditionally, when an individual guarantees a corporate debt, the corporation and the guarantor are not considered a "common debtor" because the corporation is a separate entity. This view was expressed in *Farmers and Merchants Bank v. Gibson:*

> [I]nasmuch as a corporation is an entity distinct from its stockholders or officers, as between a senior creditor of the corporation, who can also look to its stockholders or officers if he has a guaranty, and a junior creditor who has no guaranty and thus can look only to the corporate assets, the necessary condition of a common debtor does not exist, absent a basis for disregarding the corporate entity.

7 B.R. 437, 440 (Bankr.N.D.Fla.1980), *vacated and remanded,* 81 B.R. 79 (N.D.Fla.1981). Because of the common debtor requirement, courts generally do not compel a secured creditor to marshal a guarantor's assets in lieu of the debtor's assets, even when the guarantor is the sole shareholder of the corporation. *Id.* Therefore, if the trustee is to succeed, the assets sought to be charged must directly secure an obligation, as opposed to securing a guarantee, to meet the common debtor requirement. This *traditionally* required that all secured assets at issue actually belong to the same debtor (the "common debtor"), but only some of them were available to the creditor asking that the doctrine be imposed.

Even the rule that recovery from a guarantor will not be compelled before resorting to the debtor's assets is not absolute. In *Farmers and Merchants Bank v. Gibson,* 7 B.R. at 441, the bankruptcy court held that where a sole shareholder guaranteed a working capital loan, and the secured creditor was relying solely on the guarantor and not the debtor corporation for repayment, the guarantee will be viewed as a contribution to capital, and marshaling would be appropriate. The court stated that the foreseeable result of obtaining a working capital loan, based on the personal guaranty of a shareholder of the corporation, was the "inducement of others to innocently commence or continue to extend supplies or services to the principal on credit." *Id.* Thus, when the business failed, the "balance of equities tip[ped] in favor of the creditors of the principal." *Id.*

### 2. Eastern District of Wisconsin's Application of Marshaling

Various courts have interpreted and applied the traditional requirements of marshaling to modern lending practices. These courts have applied the principle of general equity, *Berman v. Green,* 597 F.2d 130 (8th Cir.1979), the doctrine of piercing the corporate veil, *In re Tampa Chain Co.,* 53 B.R. 772 (Bankr.S.D.N.Y.1985), and the contribution to capital theory, *Gibson,* 7 B.R. 437, to require marshaling of assets. Bankruptcy courts in this district have recognized the theory in which a corporation's guarantor's

property, pledged to secure a corporate obligation but not solely the guarantor's obligation, may be regarded as contribution to the capital of the corporation and thus subject to marshaling. *Matter of Multiple Services Industries, Inc.,* 18 B.R. 635, 636 (Bankr.E.D.Wis.1982); *cf. In re Bay Metro Glass Co.,* 101 B.R. 50 (Bankr.E.D.Wis.1989) (marshaling not required when property secured individual's guarantee, not corporate debt).

The focus in this district has been on the contribution to capital theory. This theory is based on the concept that providing collateral for a corporate loan can be considered, in equity, a contribution to the capital of the corporation. *See Moser Paper Co. v. North Shore Paper Co.,* 83 Wis.2d 852, 863–64, 266 N.W.2d 411, 417 (1978); *Multiple Services Industries,* 18 B.R. at 636; *see also Gibson,* 7 B.R. at 441. The Wisconsin Supreme Court applied the capital contribution analysis in *Moser Paper,* 83 Wis.2d 852, 266 N.W.2d 411. In *Moser,* the court found that the "common debtor" requirement was met when principals of the corporate debtor secured a corporate obligation with mortgages on their homesteads. The court stated,

> Most important of all, the mortgages executed by the Freys and the Polkas [the debtor's officers and principal shareholders] by their very terms secured the obligations of North Shore [the debtor corporation] directly. Although record title to the residences remained in the hands of Polka and Frey, in the eyes of equity the Polkas and the Freys had placed their residences in the company till. We hold that under these circumstances the mortgages created a fund which equity will consider a fund of North Shore itself. Under these circumstances, the marshaling of assets doctrine is appropriate.

*Id.* at 864, 266 N.W.2d at 417–18.

In *Multiple Services Industries,* 18 B.R. 635, the trustee was allowed to invoke marshaling to preserve funds for the unsecured creditors of the corporate debtor. The corporate debtor's officer and shareholder had guaranteed a bank loan for working capital, and the loan to the corporation was secured by a second mortgage on his home. The court regarded the shareholder's mortgage as a contribution to capital, and the secured creditor was forced to foreclose on the shareholder's residence before reaching the assets of the debtor's estate. *Id.* at 636–37. The trustee was required to retain the secured funds in her possession until after the foreclosure in case the bank's claim was not completely satisfied by the foreclosure.

A bankruptcy court for the Southern District of New York also followed the principle enumerated in *Multiple Services Industries:*

> Several courts have held that when a guarantor who is also a controlling shareholder provides the lender with the primary collateral needed to obtain a working capital loan to either initiate or continue the operation of the debtor corporation, the "common debtor" requirement is satisfied and the equitable remedy of marshaling is available.

*In re Tampa Chain Co.,* 53 B.R. 772, 778 (Bankr.S.D.N.Y.1985) (citing *In re Multiple Services Industries, Inc.,* 18 B.R. 635 (Bankr. E.D.Wis.1982)).

The capital contribution theory is based in equity and, therefore, "marshaling will not be applied to the detriment of a third party having an equity equal or superior to that of the person seeking to invoke the rule." *Moser Paper,* 83 Wis.2d at 861, 266 N.W.2d at 416 (quoting *Estate of Snell,* 227 Wis. 455, 467, 279 N.W. 24, 30 (1938)).

There are three assets owned by the Serwatts and available to the bank, and not to the trustee, that the bank resists recovering before it recovers the funds in the trustee's possession: (1) mortgage(s) securing a note of the corporation ($55,000 due); (2) mortgage(s) originally securing a note of the Serwatts ($105,000 due), now cross-collateralized with corporate assets; and (3) a mortgage payable to the Serwatts, assigned to the bank, which rendered it similarly subject to cross-collateralization for the personal and corporate debts. It is not clear if both parcels of real estate always secured both the notes listed in (1) and (2), but the parties agree that both properties secure both notes pursuant to the forbearance agreement dated December 15, 1992.

Mortgages securing the note of the corporation constitute a common fact situation where a common debtor is found, and marshaling is required. *E.g., Moser Paper*, 83 Wis.2d 852, 266 N.W.2d 411; *Multiple Services Industries*, 18 B.R. 635. The same will be required here with respect to the corporate note dated October 15, 1994, for which approximately $55,000 is now due, because the mortgages directly secure the corporate note, not the guarantee. The bank must foreclose on the Serwatt's real estate before resorting to secured funds in the hands of the trustee to satisfy this note.

■ The second note of the Serwatts dated February 5, 1992, secured by mortgages on their real estate, involves slightly different considerations. Here, the debt was not incurred by the debtor, but the bank has a claim against the debtor for this debt because it has a claim against property of the debtor under the general business security agreement, which secures the personal note. 11 U.S.C. § 102(2); *see* forbearance agreement *supra* p. 208. With this note, however, the equities tip even more in favor of requiring marshaling. Since the debtor may not have benefitted from the proceeds of the note (perhaps it did, but there was no legal obligation for the Serwatts to put the money in the corporation), the bank should not be able to resort to assets available only to other creditors of the debtor until it has been satisfied to the greatest extent possible from assets only available to the bank. This includes both of the Serwatt's parcels of real estate and the mortgage payable to them.

■ The bank points to possible environmental contamination as a reason for not requiring it to foreclose before resorting to the trustee's funds. However, it does not appear that the contamination is so extensive that the value of the property will be significantly diminished by the cleanup. The Phase I estimate of $10,110 is not a substantial part of the value of both properties. While there is a risk that additional problems may be uncovered, the equities weigh in favor of the bank's making an attempt to satisfy as much of its debt as possible from this collateral rather than the funds held by the trustee.

Obviously, the $129,000 the trustee holds would go a long way toward reducing the bank's $160,000 claim. Given its druthers, the bank might very well choose to collect these funds, plus the mortgage payable, until the debt is paid off. It could then save itself the trouble of foreclosing on contaminated property. Nevertheless, the equitable considerations inherent in the doctrine of marshaling of assets do not include this kind of inconvenience. Courts addressing this issue have regularly required foreclosure of a mortgage on nondebtor property securing the corporate debtor's debt before allowing recovery of funds held by the trustee that also secure the debt. *See, e.g., Multiple Services Industries, Inc.*, 18 B.R. at 636–37.

■ The automatic stay shall be modified to allow the bank to foreclose on the real estate to satisfy its claim against the debtor. The bank has also asked for relief from the automatic stay to apply an escrow account held for the debtor against these notes. This asset is similar to the funds held by the trustee. If the escrow account were applied to the notes, and the value of the real estate exceeded the remaining amount due (as it appears it might), any excess from the foreclosure sale would go to the Serwatts, not to creditors of the debtor. If foreclosure of the real estate does not satisfy the debt, the bank is vastly oversecured by reason of the $129,000 held by the trustee. No further adequate protection is necessary. Firstar must first recover from the mortgage payable and the Serwatt's real estate before applying the escrow account to the debt.

The trustee will prepare an order consistent with this decision requiring marshaling of assets by Firstar before resorting to secured funds held by the trustee and modifying the automatic stay to accomplish these purposes. The trustee will continue to hold the funds now under his control, subject to the bank's security interest, until such marshaling is complete.