**In re Marshall FIELD, Jr., Debtor.**

**Bankruptcy No. 97–05498–B.**

United States Bankruptcy Court,
D. South Carolina.

June 22, 1998.

James H. Cassidy, Love, Thornton, Arnold & Thomason, P.A., Greenville, SC, for Debtor.

Joe S. Dusenbury, Columbia, SC, for creditor SC Department of Revenue.

Judson K. Chapin, III, Gaines, Walsh & Chapin, Spartanburg, SC, for creditor Jeffrey Given.

Steven Webster, U.S. Department of Justice, Tax Division, Washington, DC, for creditor Internal Revenue Service.

Weyman Carter, McNair Law Firm, P.A., Greenville, SC, for interested party Joan Field.

### ORDER

WM. THURMOND BISHOP, Bankruptcy Judge.

This matter before the court is the objection to claims filed by Jeffrey Given, D.C. (Given), an unsecured creditor in the above reference case. Given objected to tax claims filed by the Internal Revenue Service (IRS) and by the South Carolina Department of Revenue and Taxation (the Department of Revenue). Responses in opposition to the objection to claims were filed by the IRS, the Department of Revenue, the debtor Marshall Field, Jr. and by Joan Field, the debtor's spouse. An evidentiary hearing on the objection to claims was held on May 20, 1998. For the reasons set forth below, this court overrules the objection to claims, allows the tax claims as filed, and authorizes the trustee to immediately pay the priority tax claims.

### FINDINGS OF FACT

1. Marshall Field, Jr. filed a voluntary Chapter 7 petition on July 7, 1997. His schedules reflect state and federal income tax liabilities for calendar year 1995, and a federal excise tax liability for excess distributions from individual retirement accounts. These tax claims were listed as priority claims on Schedule E.

2. L. Winston Lee, as trustee, has administered numerous assets in this case, most importantly, the debtor's stock received in return for the sale of his business; a residence jointly owned by the debtor and his wife; a promissory note; vehicles; and a cause of action for legal malpractice against a West Virginia attorney. All of the assets were disclosed in the debtor's schedules, and the debtor and his wife have assisted the trustee in the liquidation of the assets.

3. Shortly before the hearing, the trustee sold the debtor's stock which yielded proceeds for the estate in the approximate amount of $970,000.00. The stock was listed in the schedules as having a value of $700,000.00.

4. Given is the primary unsecured [1] creditor, being shown in the schedules as holding an unsecured claim in the amount of $14,300,000.00, with the unsecured non-priority claims totalling $14,356,963.00. The basis of Given's claim is a default judgment entered against Marshall Field, Jr. in a West Virginia state court.

5. Joan Field has no liability for the Given judgment and is not a debtor in this or any other bankruptcy case.

---

1. Given domesticated his judgment in Oconee County, South Carolina within ninety days of the filing of the petition. Since the creation of any judgment lien against the debtor's interest in his residence would be voidable as a preference under 11 U.S.C. § 547, Given agreed with the trustee that it would not assert a secured claim.

6. In the years leading up to the commencement of the case, Marshall Field was employed in the telecommunications industry, owning a Voice–Tel franchise. His wife, Joan Field, was not employed outside the home but provided for the family as a homemaker, wife and mother.

7. Since the 1960's, Mr. and Mrs. Field owned several homes in various states in which Marshall Field was employed. The residences were always jointly owned by the Fields.

8. In the mid 1980's, the Fields purchased a lakefront lot at 16 Point North Drive in Keowee Key, a subdivision located in Oconee County, South Carolina. In 1991, the Fields moved into a new home they had built on this lot.

9. The Fields filed joint tax returns during the years of their marriage. This was the case for tax year 1995, for which the Fields filed joint income tax returns with the IRS and the Department of Revenue.

10. The Fields' 1995 federal 1040 return showed total income of $318,336.00, all of which was income of the debtor. Of this amount, $313,007.00 represented distributions from individual retirement accounts owned by the debtor.

11. The income tax liability as indicated by the federal 1040 return was $74,635.00. In addition, other taxes reported on line 51 of the return and on form 5329 showed a tax for excess IRA distributions in the amount of $24,451.00, for a total tax of $24,451.00. After a credit for estimated taxes paid, the return indicated an amount due, exclusive of penalties, of $73,182.00.

12. The Fields' 1995 state SC1040 return, which incorporated the federal taxable income figure but not the tax on excess IRA distributions, reflected a total tax liability of $19,018.00. After a credit for estimated tax payments, the state return indicated an amount due, exclusive of penalties, of $5640.00.

13. Prior to the filing of the petition, the Fields had listed their Keowee Key residence for sale for a period of one year but received no offers. The Fields listed their home for a second time but did not receive an offer until shortly after the commencement of Mr. Field's Chapter 7 case, at which time the listing agent presented a purchase offer in the amount of $960,000.00.[2]

14. On July 30, 1997, the trustee prepared a notice of sale of the Keowee Key residence for a sales price of $960,000.00. The notice of sale reflected the debtor's half ownership of the property and indicated that the trustee was assuming the existing contract with the Fields' listing agent. The notice of sale indicated that after payment of a real estate commission of $57,600.00 and satisfaction of a mortgage in the amount of $650,000.00, the estimated net proceeds to the estate would total $102,000.00. The information in the notice of sale made clear that approximately half of the sales proceeds would flow to the estate, with the remainder going to the co-owner, Joan Field.

15. The trustee did not seek to sell Mrs. Field's interest in the Keowee Key residence along with the debtor's interest pursuant to 11 U.S.C. § 363(h). As a result, the trustee depended upon Joan Field to participate in the closing in order to accomplish the sale of the residence.

16. The trustee mailed the notice of sale to all creditors and parties in interest, including Given. The trustee received no objections to the notice of sale. At the hearing, Given's counsel acknowledged that his strategy was to allow the residence to be liquidated and then to pursue the proceeds flowing to the co-owner, Joan Field.

17. Due to the failure of Given to object to the terms of the sale as disclosed in the notice of sale, Joan Field believed that she would receive approximately half of the sales proceeds. In reliance upon this belief, Joan Field fully participated in the closing of the sale of the Keowee Key residence. The purchasers of the residence demanded that the sellers pay for repairs to the residence as a condition of closing. The trustee directed

**2.** Although the residence had not been appraised, the debtor estimated the value of the property in his schedules to be $1.1 million.

the closing attorney not to reduce the proceeds flowing to the estate and as a result, Joan Field allowed the repair costs to be taken from her anticipated proceeds.

18. Given was aware that the debtor's schedules listed the IRS and the Department of Revenue as priority creditors whose claims would be paid ahead of unsecured claims. Given, through his counsel, contacted the IRS and the Department of Revenue and suggested that the taxing authorities seize Joan Field's sales proceeds to satisfy the tax claims.

19. Thereafter, on August 21, 1997, the IRS issued a notice of levy in the amount of $74,822.84 against Joan Field.[3] The notice of levy directed the real estate closing attorney to pay the tax liability from Joan Field's sales proceeds.

20. The Department of Revenue had filed a warrant of attachment in Oconee County against the debtor and Mrs. Field shortly after the commencement of the case. Although the warrant of attachment was ineffective as to the debtor's interest by virtue of the automatic stay, it effectively encumbered Mrs. Field's one-half interest.

21. The closing attorney informed Joan Field that substantially all of her proceeds from the sale would be paid to the IRS and the Department of Revenue if the notice of levy and warrant of attachment were not dissolved before closing.

22. If Joan Field's proceeds are used to pay the tax claims which are a joint and several liability with the debtor, she would not be able to assert a priority subrogation claim by operation of 11 U.S.C. § 507(d).

23. Mrs. Field could have protected her interests by refusing to close, or by filing her own bankruptcy proceeding. Instead, she agreed with the taxing authorities to escrow[4] a portion of her closing proceeds to cover the total tax liabilities pending this court's adjudication of the state and federal tax claims.

24. The IRS filed a timely proof of claim on November 5, 1997, reflecting a priority claim for income tax and pre-petition interest of $58,874.55 and non-priority pre-petition penalties of $14,487.45, for a total claim of $73,362.00.

25. The IRS filed an amended claim on March 23, 1997, reflecting a priority claim for income tax and pre-petition interest of $86,-748.92 and non-priority pre-petition penalties of $21,945.01, for a total amended claim of $108,693.93.

26. The IRS amended claim subdivides the priority claim into two components: an income tax and excise tax for excess IRA distributions pursuant to Internal Revenue Code § 4980A.[5] Of the total priority claim, $27,874.37 is attributable to the IRA distribution (consisting of tax of $24,451.00 plus interest of $3,423.37). The IRS asserts in its response that this amount is not a joint and several liability, but is the sole liability of the debtor. Given has withdrawn any objection to this portion of the IRS priority claim.

27. The Department of Revenue filed a timely proof of claim on September 12, 1997, reflecting a priority claim for income tax and pre-petition interest of $21,639.99 and non-priority pre-petition penalties of $6,466.12, for a total claim of $28,106.11.

28. The debtor received a discharge on February 2, 1998. Since that time the IRS and the Department of Revenue have recommenced collection activities, even though the trustee has sufficient liquid funds in the estate to pay the priority tax claim in full.

3. The notice of levy included the entire tax liability under the category of regular income tax, asserting that Joan Field was jointly and severally liable for the entire amount shown on the joint tax return. The IRS has since acknowledged, in its amended proof of claim and its response to the claims objection, that $27,874.37 of its priority claim consists of an excise tax for excess distributions from the debtor's IRAs, for which Joan Field has no liability.

4. The IRS required Mrs. Field to obtain a letter of credit, which in turn is backed by a certificate of deposit. The Department of Revenue agreed to allow the funds to be placed into a separate bank account under a written escrow agreement. Mrs. Field has provided copies of the relevant documentation to Given's attorney.

5. 26 U.S.C. § 4980A (tax on excess IRA distributions) (repealed). In its response, the IRS cited to IRC § 4973, which creates a tax on excess IRA contributions. The analysis is the same.

29. The debtor did not retain significant assets as exempt, and the trustee has liquidated virtually everything that he owned prior to filing the petition. The debtor and his wife currently receive Social Security benefits as their sole source of income.

30. In addition to the priority claims of the IRS and the Department of Revenue, the trustee has received a priority claim from Oconee County, South Carolina in the amount of $347.40, for unpaid *ad valorem* taxes on the residence. No party has objected to this claim.

31. The trustee is willing to pay the priority tax claims in full upon disposition of the Given objection.

## CONCLUSIONS OF LAW

The trustee has not joined in Given's objection to the timely claims filed by the IRS and the Department of Revenue. Given's objection did not raise any substantive objection to the calculation of the claims or to the classification of the tax claims. Instead, Given's objection seeks to compel the marshalling of assets of the non-debtor spouse to pay the tax claims. For the reasons set forth below, this court concludes that the objection should be overruled and the claims allowed in their entirety. In addition, this court directs that the trustee should be authorized to pay the priority portions of the tax claims immediately.

Allowance of claims is governed by 11 U.S.C. § 502 which provides that:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and the property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

(2) such claim is for unmatured interest;

(3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property;

(4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

(5) such claim is for a debt that is unmatured on the date of the filing of the petition and is excepted from discharge under section 523(a)(5) of this title;

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property ...;

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract ...;

(8) such claim results from a reduction, due to late payment, in the amount of an otherwise applicable credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor; or

(9) proof of such claim is not timely filed....

Since the IRS and the Department of Revenue filed timely proofs of claim, this court must allow the claims in the absence of an objection. Given, as the objecting creditor, bears the burden of proof in establishing a basis for denial of the claims. The language of § 502(b) requires that this court allow the claims except to the extent that the objecting party establishes one of the enumerated bases for denial of the claims. Given's objection does not challenge the claims under any specific subsection of § 502(b), and none of subsections (2) through (9) are applicable to the tax claims.

The only possible statutory basis of the objection is that the tax claims are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law" under § 502(b)(1). Given does not assert that the tax claims are unenforceable against the debtor, but has asked that this

court apply the equitable doctrine of marshalling of assets on the grounds that the taxing authorities have the legal right and the practical ability to satisfy the tax claims from the debtor's spouse who is jointly and severally liable for the taxes by reason of the joint returns. This court concludes that marshalling is unavailable under the facts of this case.

A threshold issue is the standing of Given, an unsecured creditor, to seek marshalling of assets. The leading case in this district on marshalling of assets points out that 'marshalling is traditionally unavailable to unsecured creditors. *In re Francis Constr. Co., Inc.*, 54 B.R. 13, 14 (Bankr.D.S.C.1985). No subsequent case in our district has extended the doctrine to unsecured creditors.

■ Assuming but not deciding, as did the court in *In re Francis Constr. Co., Inc.*, that an unsecured creditor can seek marshalling, the elements are not met in this case. In order to support a claim for marshalling of assets, the creditor must prove "(1) the existence of two creditors with a common debtor; (2) the existence of two funds belonging to the debtor; (3) the legal right of one creditor to satisfy his demand from either or both of the funds, while the other may resort to only one fund." *Id.* at 14–15; *See also Exchange Bank of Kingstree v. South Carolina Nat'l Bank (In re Dig It, Inc.)*, 129 B.R. 65 (Bankr.D.S.C.1991).

■ In this case, the party seeking relief cannot satisfy the second element of two funds belonging to the debtor. The "second fund" that Given wishes the tax claimants to deplete belongs to Joan Field, who has not sought bankruptcy relief. This court is persuaded by *In re Francis Constr. Co., Inc.* that resorting to funds of a third party would violate the "two funds" requirement. *See also In re Brown*, No. 78–00168–C, 1980 Bankr.LEXIS 4860 (Bankr.W.D.Va. July 8, 1980) (marshalling applies only to assets of the estate and not to assets belonging to a third party).

Given argues that the three pronged test for marshalling of assets is merely a guideline to the court in fashioning equitable relief. There is some precedent for relaxing the requirement that the two funds belong to the common debtor on equitable principles, in three specific instances:

■ where the nondebtor (typically a corporate debtor's controlling shareholder who has guaranteed the debt and secured the guaranty with his or her own property) is the alter ego of the debtor; [2] where the nondebtor's property should equitably be deemed a capital contribution to the debtor; or [3] where the nondebtor has engaged in inequitable conduct.

*In re Borges*, 184 B.R. 874, 879 & n. 3 (Bankr.D.Conn.1995). The authority cited by Given in support of his attempt to marshal the assets of Mrs. Field recognizes these three enumerated exceptions. *In re Wm. Pietsch Co., Inc.*, 200 B.R. 207 (Bankr. E.D.Wis.1996).

The facts of the present case do not fit within the recognized exceptions to the requirement that both funds belong to the common debtor. The first two exceptions, alter ego and capital contribution, are simply inapplicable. Given has presented no evidence that Mr. and Mrs. Field have engaged in any inequitable conduct. The uncontroverted testimony presented at the hearing demonstrates that the debtor disclosed all of his assets and has cooperated with the trustee in the collection and liquidation of these assets, yielding approximately $1 million for distribution to creditors. The residence which was sold to create the "second fund" of Mrs. Field was not conveyed by the debtor on the eve of bankruptcy, but was held jointly for many years. Most importantly, it was Mrs. Field's cooperation in the sale of the residence which created not only her "second fund," but also the proceeds of the debtor's half interest which now are in the hands of the trustee. Had Mrs. Field not cooperated in closing on the first and only sale offer received for the residence, it may have simply been lost in a foreclosure sale which would have extinguished any interest of the estate.

The third prong of the marshalling test is that one creditor must have the right to obtain satisfaction from either fund. This element is not applicable to the $27,874.37 portion of the IRS claim attributable to the excess IRA distribution excise tax. The IRS

agrees that Joan Field has no liability for this portion of its tax claim, which is the sole responsibility of the debtor as the owner of the individual retirement accounts. 26 U.S.C. § 4980A(b) (Repealed in 1997). Given does not dispute the IRS's position. The court concludes that this portion of the IRS claim is not subject to the marshalling argument raised in Given's objection and therefore must be allowed.

 Even where the three elements of marshalling are met, relief is appropriate only when it can be equitably fashioned as to all the parties. 129 B.R. at 65 (Bankr.D.S.C. 1991). Marshalling is only appropriate if not unjust to the debtor, and if it is not inequitable to the interests of third parties. *In re R.L. Kelly and Sons, Millers*, 125 B.R. 945, 954 (Bankr.D.Md.1991). Application of marshalling to liquidate funds belonging to Mrs. Field, a nondebtor, would not be equitable. Even though Mrs. Field signed the joint tax returns, the returns show that all of the income which generated the tax liability was income of the debtor. The Department of Revenue acknowledged on the record that Mrs. Field may be eligible to seek relief from any tax liability under the "innocent spouse" provision of the South Carolina Code. It is the debtor who filed a petition for relief seeking liquidation of his assets to pay his liabilities. Mrs. Field has not filed a bankruptcy petition and therefore has not submitted her assets to the court for liquidation. Marshalling is not appropriate under these facts.

Joan Field, in her reply, seeks to prevent Given's marshalling attempt on the basis of unclean hands. She asserts that Given was aware of the existence of the priority tax claims and that the notice of sale of the residence contemplated a sale in which Mrs. Field would receive her half of the proceeds; that Given made a tactical decision to allow the favorable sale to go forward but did not object to the sale; that Mrs. Field was therefore induced to believe that Given did not challenged her receipt of proceeds. She further claims Given "tipped" the taxing authorities to the fact that they might be able to satisfy their tax claims immediately at closing, rather than waiting for a Chapter 7

distribution; that when this proved unsuccessful, due to the taxing authorities' willingness to enter into escrow agreements with Mrs. Field, Given attempted to enjoin Mrs. Field from using her proceeds by means of a temporary restraining order. She claims that this creditor should not be permitted to obtain the extraordinary equitable relief he seeks under these circumstances. While Given's tactics were somewhat underhanded, this court does not base its decision not to fashion an equitable remedy in favor of Given on "unclean hands" and therefore makes no finding in this regard.

Given is not asking this court to enjoin the taxing authorities from satisfying their liens and claims from property of the debtor, but rather to require them first to satisfy their claims from property of Mrs. Field. While this court does have jurisdiction over the IRS and the Department of Revenue, creditors in this bankruptcy case, this court questions and doubts its authority to order them to satisfy their claims from property of Mrs. Field as it has no jurisdiction over property not property of the estate.

Joan Field has requested that the trustee be authorized and directed to pay the priority portion of the tax claims without further delay. The trustee has collected more than sufficient funds to pay the tax claims and has stated that he has no objection to making an interim distribution. No other party has objected to this relief. It is therefore

ORDERED, ADJUDGED AND DECREED, that

1. The objection to claims filed by Jeffrey Given, D.C. is overruled.

2. The United States of America, Internal Revenue Service, shall have an allowed § 507(a)(8)(A) priority claim in the amount of $86,748.92 (which includes the $27,748.92) (which includes the $27,874.37 attributable to the IRA distribution excise tax) and an allowed unsecured non-priority claim in the amount of $21,945.01.

3. The South Carolina Department of Revenue and Taxation shall have an allowed § 507(a)(8)(A) priority claim in the amount of $21,639.99 and an allowed unsecured non-priority claim in the amount of $6,466.12.

4. The trustee is authorized and directed immediately to pay the following priority claims without further notice or hearing:

a. § 507(a)(8)(A) priority claim of the Internal Revenue Service in the amount of $86,748.92;

b. § 507(a)(8)(A) priority claim of the South Carolina Department of Revenue in the amount $21,639.99; and

c. § 507(a)(8)(B) priority claim of Oconee County, South Carolina in the amount of $347.40.

5. The trustee may, at his discretion, propose an interim distribution to other creditors.