## In re UNIVERSAL ELECTRIC SIGN CO., INC., Debtor.

No. 99–30673.

United States Bankruptcy Court, E.D. Wisconsin.

Oct. 24, 2000.

Michael S. Polsky, Milwaukee, WI, for Allanson, International and Standard Neo–Lite.

Charles H. Barr, Milwaukee, WI, for Movant Everbrite, Inc.

Michael F. Dubis, Waterford, WI, for Jerome A. Tepper, Chapter 7 Trustee.

Mark L. Metz, Reinhart Boerner Vandeuren Norris & Rieselbach SC, Milwaukee, WI, for Art Etc., Inc.

Albert Solochek, Howard Solochek & Weber SC, for Secured Creditor LaSalle Business Credit.

ORDER APPROVING TRUSTEE'S PROPOSED COMPROMISE WITH LaSALLE BANK AND ART ETC., INC.

MARGARET DEE McGARITY,
Bankruptcy Judge.

For the reasons set forth in the court's memorandum decision entered on this date, IT IS ORDERED the trustee's proposed compromise with LaSalle Bank and Art Etc., Inc., is approved.

MEMORANDUM DECISION ON OBJECTIONS TO TRUSTEE'S PROPOSED COMPROMISE WITH LaSALLE BANK AND ART ETC., INC.

This matter came before the court upon notice by the chapter 7 trustee of his intention to compromise the estate's claim for marshaling of assets, whereby a co-debtor of the debtor would pay the estate $15,000, and the secured creditor would not be compelled to proceed against the co-debtor or its assets. Three creditors objected to the compromise as being of inadequate benefit to the estate. A hearing was held, at which time the court took evidence on the ability of the co-debtor to reimburse the estate and heard arguments of counsel concerning whether the compromise is in the best interest of the estate. For the reasons stated herein, the compromise is approved.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052, made applicable to a contested matter by Fed. R. Bankr.P. 9014. A separate order consistent with this decision will be entered.

### FACTS

Universal Electric Sign Co., Inc., ("Universal" or "debtor") was a manufacturer of custom made electric signs. Stock in the debtor was wholly owned by a holding company, EPIK Corporation, which also owns all of the stock in Art Etc., Inc. ("Art"). Art is engaged in the business of commercial artwork and printing. It is a profitable company that is not in bankruptcy. The same individual executed loan documents in 1998 as CEO of UES Acquisition, Inc., the name previously used by the debtor, and as President of Art. Likewise, another individual executed a forbearance agreement in 1999 as Secretary of both the debtor and Art. Thus, it is safe to say that the debtor and Art were under common control.

On September 14, 1998, both the debtor and Art executed a loan and security

agreement with LaSalle Business Credit, Inc. ("LaSalle"). Each company received a series of loans under separate provisions of the agreement, which had different terms and borrowing bases, but the agreement provided that all assets of each corporation were pledged as collateral for funds advanced to both companies. Thus, LaSalle's claim for funds advanced to the debtor, originally totaling slightly less than $1.4 million at the time of filing, could be recovered not only from the debtor's assets, but also from Art's assets.

Since much of the debtor's products were custom made, there was a limited market for much of its inventory and work in process. Finished goods usually had only one possible customer. The trustee conducted a number of private sales and a public auction, the proceeds of which reduced LaSalle's claim pursuant to the cash collateral order. Virtually all of the debtor's assets have now been liquidated. LaSalle is still owed about $525,000, which is carried on Art's books as a current liability. The cash collateral order provided for payment by LaSalle of expenses of liquidating the collateral, and there was a carve-out to the estate for payment of other claims. The trustee now holds about $60,000.

The trustee demanded that LaSalle marshal assets to force LaSalle to satisfy its debt from Art's assets to the extent possible, leaving other assets available to pay the estate's creditors. LaSalle refused, asserting that it was not legally required to do so. The trustee then entered into negotiations with Art to settle the trustee's claim against LaSalle, which would avoid the risk to Art that the court would order LaSalle to attempt recovery from Art in an even greater amount than is currently outstanding. Art offered to pay the estate $15,000 in full satisfaction of the marshaling claim. Three creditors, Everbrite, Inc., Allanson International, Inc., and Standard Neo–Lite, Inc., objected as they believe Art could pay substantially more to the estate.

## DISCUSSION

■ The Seventh Circuit ha ˍvided excellent guidance for the bankruptcy court faced with evaluating a proposed compromise between the bankruptcy estate and an entity against whom the bankruptcy estate asserts a claim. *Depoister v. Mary M. Holloway Foundation,* 36 F.3d 582 (7th Cir.1994); *In re American Reserve Corp.,* 841 F.2d 159 (7th Cir.1987). The court's focus is on whether the compromise is in the best interests of the estate, taking into consideration competing priorities within the estate, such as administrative claims versus unsecured claims. The court need not conduct a trial on the merits, as avoidance of such a trial is the purpose of compromise, but there must be sufficient facts considered to make a reasonable analysis of the probability of success and the cost of litigation. *Depoister,* 36 F.3d at 586; *American Reserve,* 841 F.2d at 161. Factors to be analyzed include the probability that the estate will prevail in litigation, the complexity of litigation, the cost, inconvenience and delay associated with litigation, and the possibility that litigation will consume assets of the estate that would otherwise be distributable to creditors. *American Reserve,* 841 F.2d at 161. The trustee must also be concerned with the difficulty of collecting a judgment if the trustee prevails.

■ The nature of the trustee's claim in this case is a demand that the secured creditor marshal assets. In Wisconsin, the doctrine may be summarized as follows: (1) there are two creditors of the debtor, one of whom may be a bankruptcy trustee; (2) one creditor can recover from two funds or pools of assets belonging to the debtor; and (3) the other creditor has recourse only to one fund of the debtor's. *Moser Paper Co. v. North Shore Publ'g Co.,* 83 Wis.2d 852, 861, 266 N.W.2d 411, 416 (1978). Pledging another party's assets directly to secure a loan to the debtor constitutes a contribution of capital to the debtor, thus satisfying the requirement of

the existence of two funds belonging to the debtor. Marshaling assets is not an absolute right and equitable considerations may also apply. *Id.* If marshaling is ordered, the first creditor must look first to the fund that is not available to the other creditor before resorting to the fund that is available to both. *Id.* This doctrine applies to the enforcement of property rights when those rights are litigated in bankruptcy court, provided Wisconsin law applies to the property rights in question. *In re Wm. Pietsch Co.,* 200 B.R. 207 (Bankr.E.D.Wis.1996); *Matter of Multiple Servs. Indus., Inc.,* 18 B.R. 635 (Bankr. E.D.Wis.1982). While the forbearance agreement between the parties provides that it is governed by Illinois law, the loan agreement now at issue is silent on choice of laws. As no one has argued otherwise, this court will assume that Wisconsin law would apply.

In this case, LaSalle is entitled to recover from both the debtor's assets and Art's assets, whereas the estate's creditors can only recover from the debtor's assets. As marshaling is an equitable doctrine, Art asserts that there are a number of defenses to the trustee's demand of LaSalle to marshal, not the least of which is the fact that Art has already poured a great deal of money down this particular drain. It is only willing to contribute $15,000 more, and the trustee proposes to accept this amount and to release Art from any further claims by the debtor. It is undisputed that LaSalle can still assert its claims against Art to the extent it is not paid by liquidation of the debtor's assets.

The nature of the marshaling defenses were not fully litigated, but on the surface it appears that the trustee has a meritorious claim. All loans to Art and the debtor were fully cross collateralized. Although the notice sent to creditors by the trustee and Art's own balance sheet refer to Art's obligation for Universal's debts as a "guarantee," it is not. Assets securing a guarantee, which is an independent obligation of the guarantor, are not considered funds of the debtor. In this instance, both co-debtors pledged their assets to secure the debts of the other to LaSalle, thus making a direct contribution to the capital of the sister corporation and giving LaSalle access to two funds of the debtor. This is one of the elements required to invoke the doctrine of marshaling. No doubt LaSalle structured the loan in this manner to give it extra protection against what actually happened. Therefore, it appears that the trustee has met at least the base criteria to require marshaling.

The trustee points out that he has only about $60,000 for administrative claims (and unsecured creditors, such as the objecting creditors, if there is any money left over). With both LaSalle and Art vigorously resisting the demand to marshal, a substantial part of those funds could be consumed in the costs of litigation. It is conceivable that it would not be enough, in which case the trustee would have to abandon the claim when he runs out of money. This is not a problem for the objecting creditors, who stand to receive little or nothing from the estate as it is now comprised, but the debtor's former employees stand to lose their unpaid wages. Thus, the trustee would be gambling with these employees' distributions as well as his own fees, after he has devoted a substantial amount of time to liquidating the estate. He is understandably reluctant to do so, and there is not enough money in the estate to make it reasonable to compel him to undertake such litigation.

Most of the evidence presented by both sides related to the issue of Art's ability to pay. David Tepper, CPA, brother of the trustee, was asked to evaluate Art to determine whether Art can pay more than $15,000 to the estate. He reviewed drafts of financial statements for Art for the fiscal year ending April 30, 1999, prepared by an outside auditor. (Ex. 2) These had not yet been finalized, but Mr. Tepper apparently believed they were sufficiently reliable for him to render an opinion. He testified that he believed that Art could

contribute $75,000 to $100,000 to the estate toward the debt of the debtor, but only if Art restructures its debts to convert short term debt to long term debt. He based this on the observation that current liabilities of Art exceed its current assets. Current liabilities include $525,000 owed to LaSalle on the debtor's portion of their joint debt. Without this current liability, Art's current assets exceed its current liabilities by about $80,000.

What troubled the creditors, and also troubled this court, was the size of the settlement compared with Art's ability to pay the estate to avoid the effect of marshaling. Art's total assets, without goodwill, are valued at $2,458,529, and liabilities, including the $525,000 still due LaSalle, are only $1,817,117. The company posted a loss of $1,899,219 for the year ending April 30, 2000, but that was after a writeoff of $2,162,582 for "unusual charges," apparently payments made on behalf of the debtor or writeoff of amounts owed Art by the debtor. Without the burden of Universal, and disregarding other unspecified, nonoperational expenses, Art's operations alone would have shown a profit of $231,351. However, the Statement of Cash Flows shows payments of cash for financing activities well in excess of that amount, over $437,000. A comparison of the February 2000, financial statements attached to the creditors' objection and the audit reports for the year ending April 2000, show a decrease in debt to LaSalle of only about $80,000, so the majority of cash payments must have been for interest on its own advances, or possibly payments on the debtor's advances. This is a viable company, but saddled with the burden of Universal's liability, it is by no means fat with excess cash.

The three Wisconsin cases cited in support of ordering the secured creditor to marshal assets, one in the state supreme court and two in Wisconsin bankruptcy courts, all involve the pledge of personally owned real estate by the principal of a corporation for the debt of the corporation. *See Moser Paper Co. v. North Shore Publ'g Co.*, 83 Wis.2d 852, 266 N.W.2d 411 (1978); *In re Wm. Pietsch Co.*, 200 B.R. 207 (Bankr.E.D.Wis.1996); *Matter of Multiple Servs. Indus., Inc.*, 18 B.R. 635 (Bankr.E.D.Wis.1982). This was treated as a contribution to the capital of the corporation, and the secured creditor was required to realize on the real estate before resorting to corporate assets. However, the instant case involves the pledge of assets of another corporation. If LaSalle were forced to realize on Art's assets before applying the $800,000 it has already collected from liquidation of the debtor's assets, it would be necessary to liquidate Art. Art does not have $1.4 million in ready assets. Liquidation would remove a viable company from commerce, and Art's employees as well as Universal's employees would be unemployed. Unlike a preexisting loan on a corporate owner's house, which may have a perfected mortgage superior to the interests of a marshaling creditor, it is not clear in the liquidation scheme where other creditors of Art might stand. This would include Art's accrued wages, payroll taxes and trade payables totaling over $300,000. Such creditors are not apt to be protected like a first mortgage holder. Payment of LaSalle after liquidation might exhaust Art's assets, but Art's unsecured creditors would not have claims in Universal's bankruptcy, leaving the proceeds of Universal's liquidation available only to Universal's creditors. In addition, there is a $110,000 liability to a shareholder of Art that would not be paid.

This scenario is in stark contrast to the circumstance when a corporate principal mortgages a house to gain credit for the company. If marshaling is ordered, only the principal and his or her family sustain losses. It is foreseeable that the person who had the most to gain if the company succeeded also takes the consequences if the company fails. Also, the company's unsecured creditors benefit, and the se-

cured creditor fully recovers. However, if a co-debtor corporation must be liquidated, the fallout is much greater. Here, Art's creditors might find themselves subordinated to Universal's unsecured creditors, which is patently unfair. After all, they granted credit to a profitable company and could not expect it to be invaded by the creditors of a defunct sister corporation. The results of litigation to force liquidation are, of course, highly speculative, and case law is quite sparse; however, it is persuasively arguable that forcing Art to liquidate is not a good use of the marshaling doctrine. This makes the trustee's prospects of succeeding in litigation highly uncertain, which enhances the attractiveness of a compromise.

Since marshaling is an equitable doctrine, the court might fashion a remedy short of forcing liquidation by ordering LaSalle to satisfy its debt from Art's assets to the fullest extent possible. Perhaps a charging order in excess of $15,000 could be ordered instead. Again, the litigation would be costly, requiring considerable accounting expertise and testimony. If Art pays LaSalle only the remaining $525,000, and not the $1,400,000 Universal owed LaSalle at filing, Art may survive. This is still a substantial unrelated debt for a company with $6.4 million in annual gross sales. It is highly speculative at this juncture just how much extra debt Art could bear and still survive.

For the foregoing reasons, the court approves the trustee's proposed compromise with LaSalle Bank and Art Etc., Inc. A separate order consistent with this decision will be entered.